# HAGANS ET AL. *v.* LAVINE, COMMISSIONER, NEW YORK DEPARTMENT OF SOCIAL SERVICES, ET AL.

No. 72–6476. Argued December 11, 1973—
Decided March 25, 1974

WHITE, J., delivered the opinion of the Court, in which DOUGLAS, BRENNAN, STEWART, MARSHALL, and BLACKMUN, JJ., joined. POWELL, J., filed a dissenting opinion, in which BURGER, C. J., and REHNQUIST, J., joined, *post*, p. 550. REHNQUIST, J., filed a dissenting opinion, in which BURGER, C. J., and POWELL, J., joined, *post*, p. 552.

*Carl Jay Nathanson* argued the cause for petitioners, With him on the briefs were *Steven J. Cole* and *Henry A. Freedman*.

*Michael Colodner*, Assistant Attorney General of New York, argued the cause for respondent Lavine. With him on the brief were *Louis J. Lefkowitz*, Attorney Gen-

eral, and *Samuel A. Hirshowitz,* First Assistant Attorney General.

Mr. Justice White delivered the opinion of the Court.

Petitioners, recipients of public assistance under the cooperative federal-state Aid to Families With Dependent Children (AFDC) program,[1] brought this action in the District Court for themselves and their infant children and as representatives of other similarly situated AFDC recipients. Their suit challenged a provision of

[1] AFDC is one of several major categorical public assistance programs established by the Social Security Act of 1935, and as we described in *King* v. *Smith,* 392 U. S. 309, 316–317 (1968), it is founded on a scheme of cooperative federalism:

"It is financed largely by the Federal Government, on a matching fund basis, and is administered by the States. States are not required to participate in the program, but those which desire to take advantage of the substantial federal funds available for distribution to needy children are required to submit an AFDC plan for the approval of the Secretary of Health, Education, and Welfare (HEW). 49 Stat. 627, 42 U. S. C. §§ 601, 602, 603, and 604. See [U. S. Advisory Commission Report on Intergovernmental Relations, Statutory and Administrative Controls Associated with Federal Grants for Public Assistance 21–23 (1964)]. The plan must conform with several requirements of the Social Security Act and with rules and regulations promulgated by HEW. 49 Stat. 627, as amended, 42 U. S. C. § 602 (1964 ed., Supp. II). See also HEW, Handbook of Public Assistance Administration, pt. IV, §§ 2200, 2300 . . . ."

See also *Rosado* v. *Wyman,* 397 U. S. 397, 407–409 (1970).

Under the Social Security Act, HEW withholds federal funds for implementation of a state AFDC plan until compliance with the Act and the Department's regulations. HEW may also terminate partially or entirely federal payments if "in the administration of the [state] plan there is a failure to comply substantially with any provision required by section 602 (a) of [the Act] to be included in the plan." 42 U. S. C. § 604. See *King* v. *Smith, supra,* at 317 n. 12; *Rosado* v. *Wyman, supra,* at 420–422.

the New York Code of Rules and Regulations permitting the State to recoup prior unscheduled payments for rent from subsequent grants under the AFDC program.[2] They alleged that the recoupment regulation violated the Equal Protection Clause of the Fourteenth Amendment and contravened the pertinent provisions of the Social Security Act governing AFDC and the regulations promulgated thereunder by the administering federal agency, the Department of Health, Education, and Welfare (HEW).[3] The action sought injunctive and declaratory

---

[2] The challenged regulation provides, in pertinent part:

"(g) *Payment for services and supplies already received.* Assistance grants shall be made to meet only current needs. Under the following specified circumstances payment for services or supplies already received is deemed a current need:

. . . . .

"(7) For a recipient of public assistance who is being evicted for nonpayment of rent for which a grant has been previously issued, an advance allowance may be provided to prevent such eviction or rehouse the family; and such advance shall be deducted from subsequent grants in equal amounts over not more than the next six months. When there is a rent advance for more than one month, or more than one rent advance in a 12 month period, subsequent grants for rent shall be provided as restricted payments in accordance with Part 381 of this Title." 18 N. Y. C. R. R. § 352.7 (g)(7).

As AFDC recipients, petitioners receive monthly grants calculated to provide 90% of their family needs for shelter, fuel, and other basic necessities. For one reason or another, each petitioner was unable to pay her rent, and faced with imminent eviction, she received emergency rent payments from the Nassau County Department of Social Services. Because the State characterized these payments as "advances," the amount of these disbursements was deducted or recouped from petitioners' subsequent monthly familial assistance grants pursuant to § 352.7 (g)(7).

[3] Petitioners alleged that the New York State recoupment regulation was contrary to the following provisions of the federal statute and regulations because it assumed, contrary to fact, that those funds, extended to a recipient to satisfy a current emergency rent need,

relief pursuant to 42 U. S. C. § 1983 and 28 U. S. .C. § 2201, and jurisdiction was invoked under 28 U. S. C. §§ 1343 (3) and (4). The District Court found that the equal protection claim was substantial and provided a basis for pendent jurisdiction to adjudicate the so-called "statutory" claim—the alleged conflict between state and federal law. After hearing, the trial court declared the recoupment regulation contrary to the Social Security Act and HEW regulations and enjoined its implementa-

---

remain available as income for the family's need during the mandated six-month recoupment period.

Title 42 U. S. C. §§ 602 (a)(7) and (a)(10) state in pertinent part:

"(a) A State plan for aid and services to needy families with children must . . . (7) except as may be otherwise provided in clause (8), provide that the [administering] State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, or any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid, as well as any expenses reasonably attributable to the earning of any such income . . . .

.        .        .        .        .

"(10) provide, effective July 1, 1951, that all individuals wishing to make application for aid to families with dependent children shall have opportunity to do so, and that aid to families with dependent children shall be furnished with reasonable promptness to all eligible individuals . . . ."

45 CFR § 233.20 (a)(3)(ii)(c):

"(a) Requirements for State Plans. A State Plan for OAA, AFDC, AB, APTD or AABD must, as specified below:

.        .        .        .        .

"(3) . . . .

(ii) Provide that, in establishing financial eligibility and the amount of the assistance payment: . . . (c) only such net income as is actually available for current use on a regular basis will be considered, and only currently available resources will be considered . . . ."

tion or enforcement. Following a remand,[4] the Court of Appeals reversed, holding that because petitioners had failed to present a substantial constitutional claim, the District Court lacked jurisdiction to entertain either the equal protection or the statutory claim. 471 F. 2d 347 (CA2 1973). The jurisdictional question being an important one, we granted certiorari. 412 U. S. 938 (1973). For reasons set forth below, we hold that the District Court had jurisdiction under 28 U. S. C. § 1343 (3) to consider petitioners' attack on the recoupment regulation.[5]

---

[4] On appeal from the District Court's entry of the injunction, the Court of Appeals without extended discussion found jurisdiction for the § 1983 action under 28 U. S. C. § 1343 (3). Without passing on the merits of the District Court's findings and conclusions, the Court of Appeals, with one judge dissenting, ordered a remand to that court to determine whether the recoupment of prior advance rent payments from current grants is a "reduction in grant" that would trigger the New York fair-hearing procedures under 18 N. Y. C. R. R. § 351.26. 462 F. 2d 928 (CA2 1972).

On remand, the District Court allowed additional parties who had received fair hearings to intervene and file a complaint. At the invitation of the court, HEW filed an *amicus curiae* brief which concluded that "the New York regulation does contravene federal requirements because it assumes for particular months the existence of income and resources which by definition are not currently available for such months." Brief for Petitioners Appendix 2. The District Court once again held the recoupment regulation invalid as violative of the Social Security Act and HEW regulations and enjoined its enforcement and implementation.

[5] In view of our disposition of this case, we do not reach the question whether, wholly aside from the pendent-jurisdiction rationale relied upon by the District Court, other valid grounds existed for sustaining its jurisdiction to entertain and decide the claim of conflict between federal and state law. It has been suggested, for example, that the conflict question is itself a constitutional matter within the meaning of § 1343 (3). *Connecticut Union of Welfare Employees* v. *White*, 55 F. R. D. 481, 486 (Conn. 1972). For purposes of interpreting and applying 28 U. S. C. § 2281, the three-judge-court provision, a claim of conflict between federal and state

# I

Petitioners brought this action under 42 U. S. C. § 1983, which provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State

law has been denominated a claim not requiring a three-judge court. *Swift & Co.* v. *Wickham,* 382 U. S. 111 (1965). But *Swift* itself recognized that a suit to have a state statute declared void and to secure the benefits of the federal statute with which the state law is allegedly in conflict cannot succeed without ultimate resort to the Federal Constitution—"to be sure, any determination that a state statute is void for obstructing a federal statute does rest on the Supremacy Clause of the Federal Constitution." *Id.,* at 125. Moreover, when we have previously determined that state AFDC laws do not conform to the Social Security Act or HEW regulations, they have been invalidated under the Supremacy Clause. See *Townsend* v. *Swank,* 404 U. S. 282, 286 (1971). It is therefore urged that the "secured by the Constitution" language of § 1343 (3) should not be construed to exclude Supremacy Clause issues. That question we leave for another day.

Petitioners contend that § 1983 authorizes suits to vindicate rights under the "laws" of the United States as well as under the Constitution and that a suit brought under § 1983 to vindicate a statutory right under the Social Security Act, is a suit under an Act of Congress "providing for the protection of civil rights, including the right to vote" within the meaning of § 1343 (4). They further argue that in any event, § 1343 (3) in particular, and § 1343 in general, should be construed to invest the district courts with jurisdiction to hear any suit authorized by § 1983. These issues we also do not reach. See *Rosado* v. *Wyman,* 397 U. S., at 405 n. 7; see also Herzer, Federal Jurisdiction Over Statutorily-Based Welfare Claims, 6 Harv. Civ. Rights-Civ. Lib. L. Rev. 1, 16–18 (1970); Note, Federal Jurisdiction Over Challenges to State Welfare Programs, 72 Col. L. Rev. 1404, 1405–1435 (1972); Note, Federal Judicial Review of State Welfare Practices, 67 Col. L. Rev. 84, 109–115 (1967).

Several past decisions of this Court concerning challenges by federal categorical assistance recipients to state welfare regulations have either assumed that jurisdiction existed under § 1343 or so

or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

By its terms, § 1983 embraces petitioners' claims that the challenged regulation enforced by respondent state and county welfare officials deprives them of a right "secured by the Constitution and laws," *viz.*, the equal protection of the laws. But the federal cause of action created by the section does not by itself confer jurisdiction upon the federal district courts to adjudicate these claims. Accordingly, petitioners relied principally upon 28 U. S. C. § 1343 (3):

"The district courts shall have original jurisdic-

---

stated without analysis. See, *e. g., Carleson* v. *Remillard,* 406 U. S. 598 (1972); *Carter* v. *Stanton,* 405 U. S. 669, 671 (1972); *Townsend* v. *Swank,* 404 U. S., at 284 n. 2; *California Human Resources Dept.* v. *Java,* 402 U. S. 121 (1971); *Dandridge* v. *Williams,* 397 U. S. 471 (1970); *Goldberg* v. *Kelly,* 397 U. S. 254 (1970); *King* v. *Smith,* 392 U. S., at 312 n. 3; *Damico* v. *California,* 389 U. S. 416 (1967). In none of these cases was the jurisdictional issue squarely raised as a contention in the petitions for certiorari, jurisdictional statements, or briefs filed in this Court. See *Edelman* v. *Jordan, post,* at 670–671. Moreover, when questions of jurisdiction have been passed on in prior decisions *sub silentio,* this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us. *United States* v. *More,* 3 Cranch 159, 172 (1805); *King Mfg. Co.* v. *Augusta,* 277 U. S. 100, 134–135, n. 21 (1928) (Brandeis, J., dissenting). We therefore approach the question of the District Court's jurisdiction to entertain this suit as an open one calling for a canvass of the relevant jurisdictional considerations. *Florida Lime & Avocado Growers* v. *Jacobsen,* 362 U. S. 73, 88 (1960) (Frankfurter, J., dissenting).

tion of any civil action authorized by law to be commenced by any person:

.      .      .      .      .

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States . . . ."

Concededly, § 1343 authorizes a civil action to "redress the deprivation, under color of any State . . . regulation . . . of any right . . . secured by the Constitution of the United States." Section 1343 (3) therefore conferred jurisdiction upon the District Court to entertain the constitutional claim if it was of sufficient substance to support federal jurisdiction. If it was, it is also clear that the District Court could hear as a matter of pendent jurisdiction the claim of conflict between federal and state law, without determining that the latter claim in its own right was encompassed within § 1343. *Rosado* v. *Wyman,* 397 U. S. 397, 402–405 (1970); see also *N. Y. Dept. of Social Services* v. *Dublino,* 413 U. S. 405, 412 n. 11 (1973).

The Court of Appeals ruled that petitioners had not tendered a substantial constitutional claim and ordered dismissal of the entire action for want of subject matter jurisdiction. The principle applied by the Court of Appeals—that a "substantial" question was necessary to support jurisdiction—was unexceptionable under prior cases. Over the years this Court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are "so attenuated and unsubstantial as to be absolutely devoid of merit," *Newburyport Water Co.* v. *Newburyport,* 193

U. S. 561, 579 (1904); "wholly insubstantial," *Bailey* v. *Patterson,* 369 U. S. 31, 33 (1962); "obviously frivolous," *Hannis Distilling Co.* v. *Baltimore,* 216 U. S. 285, 288 (1910); "plainly unsubstantial," *Levering & Garrigues Co.* v. *Morrin,* 289 U. S. 103, 105 (1933); or "no longer open to discussion," *McGilvra* v. *Ross,* 215 U. S. 70, 80 (1909). One of the principal decisions on the subject, *Ex parte Poresky,* 290 U. S. 30, 31–32 (1933), held, first, that "[i]n the absence of diversity of citizenship, it is essential to jurisdiction that a substantial federal question should be presented"; second, that a three-judge court was not necessary to pass upon this initial question of jurisdiction; and third, that "[t]he question may be plainly unsubstantial, either because it is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.' *Levering & Garrigues Co.* v. *Morrin, supra; Hannis Distilling Co.* v. *Baltimore,* 216 U. S. 285, 288; *McGilvra* v. *Ross,* 215 U. S. 70, 80."

Only recently this Court again reviewed this general question where it arose in the context of convening a three-judge court under 28 U. S. C. § 2281:

" 'Constitutional insubstantiality' for this purpose has been equated with such concepts as 'essentially fictitious,' *Bailey* v. *Patterson,* 369 U. S., at 33; 'wholly insubstantial,' *ibid.;* 'obviously frivolous,' *Hannis Distilling Co.* v. *Baltimore,* 216 U. S. 285, 288 (1910); and 'obviously without merit,' *Ex parte Poresky,* 290 U. S. 30, 32 (1933). The limiting words 'wholly' and 'obviously' have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitu-

tionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U. S. C. § 2281. A claim is insubstantial only if ' "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." ' *Ex parte Poresky, supra,* at 32, quoting from *Hannis Distilling Co.* v. *Baltimore, supra,* at 288; see also *Levering & Garrigues Co.* v. *Morrin,* 289 U. S. 103, 105–106 (1933); *McGilvra* v. *Ross,* 215 U. S. 70, 80 (1909)." *Goosby* v. *Osser,* 409 U. S. 512, 518 (1973).

The substantiality doctrine as a statement of jurisdictional principles affecting the power of a federal court to adjudicate constitutional claims has been questioned, *Bell* v. *Hood,* 327 U. S. 678, 683 (1946), and characterized as "more ancient than analytically sound," *Rosado* v. *Wyman, supra,* at 404. But it remains the federal rule and needs no re-examination here, for we are convinced that within accepted doctrine petitioners' complaint alleged a constitutional claim sufficient to confer jurisdiction on the District Court to pass on the controversy.

Jurisdiction is essentially the authority conferred by Congress to decide a given type of case one way or the other. *The Fair* v. *Kohler Die Co.,* 228 U. S. 22, 25 (1913). Here, §§ 1343 (3) and 1983 unquestionably authorized federal courts to entertain suits to redress the deprivation, under color of state law, of constitutional rights. It is also plain that the complaint formally alleged such a deprivation. The District Court's jurisdiction, a matter for threshold determination, turned

on whether the question was too insubstantial for consideration.

In *Dandridge* v. *Williams*, 397 U. S. 471 (1970), AFDC recipients challenged the Maryland maximum grant regulation on equal protection grounds. We held that the issue should be resolved by inquiring whether the classification had a rational basis. Finding that it did, we sustained the regulation. But *Dandridge* evinced no intention to suspend the operation of the Equal Protection Clause in the field of social welfare law. State laws and regulations must still "be rationally based and free from invidious discrimination." *Id.*, at 487. See *Jefferson* v. *Hackney*, 406 U. S. 535, 546 (1972); *Carter* v. *Stanton*, 405 U. S. 669, 671 (1972); cf. *San Antonio School District* v. *Rodriguez*, 411 U. S. 1 (1973).

Judged by this standard, we cannot say that the equal protection issue tendered by the complaint was either frivolous or so insubstantial as to be beyond the jurisdiction of the District Court. We are unaware of any cases in this Court specifically dealing with this or any similar regulation and settling the matter one way or the other.[6] Nor is it immediately obvious to us from the

---

[6] Those district courts that have ruled on similarly drafted state recoupment provisions have found that they were not rationally related to the declared purposes of the AFDC program and were therefore invalid under the Social Security Act and HEW regulations. In *Cooper* v. *Laupheimer*, 316 F. Supp. 264 (ED Pa. 1970), the District Court, after finding the equal protection claim substantial, invalidated a Pennsylvania regulation that recouped over a two-month period alleged overpayments from a family's assistance grants. The court found the regulation inconsistent with the Social Security Act for several reasons, including, *inter alia*, the punishment of the dependent child by depriving him of a substantial amount of his AFDC assistance because his mother either mistakenly or fraudulently obtained an extra payment months ago. "[T]he state cannot justify its [arbitrary] method of restitution by asserting that proper management of funds would produce such a

face of the complaint that recouping emergency rent payments from future welfare disbursements, which petitioners argue deprived needy children because of parental

[cash] reserve. The state cannot permit a child to starve or be deprived of aid that he needs because of the mother's budgetary mismanagement. The Social Security Act specifies remedies for such a situation . . . ." *Id.*, at 269.

In *Bradford* v. *Juras*, 331 F. Supp. 167 (Ore. 1971), the District Court found that it had subject-matter jurisdiction over the constitutional and statutory challenge to an Oregon regulation authorizing recoupment of overpayments from current assistance grants. Measuring the regulation against the goals of the AFDC program, the court invalidated it as inconsistent with federal law.

"The primary concern of Congress in establishing the AFDC program was the welfare and protection of the needy dependent child. 42 U. S. C. § 601; King v. Smith, 392 U. S. 309, 313 . . . (1968). This concern is thwarted when recoupment from current grants takes money from the child to penalize the misconduct of its parent.

". . . The child-oriented policy of the AFDC program requires that children with equal needs be treated equally. The fact that a parent-recipient has acted wrongfully in the past by withholding information does not justify reducing the subsistence level of her children below that of other needy children." 331 F. Supp., at 170.

In *Holloway* v. *Parham*, 340 F. Supp. 336 (ND Ga. 1972), an equal protection and due process challenge to a Georgia statute mandating recoupment from future grants for past unlawful payments was deemed substantial enough to warrant the convening of a three-judge court. Addressing the pendent claim of inconsistency with the Social Security Act and HEW regulations, the court ruled that the law was valid because it required a prerecoupment determination that all or part of the overpayments are currently available to the parent and the children.

Although it did not explore the question in depth, the first Court of Appeals panel in this case that passed upon the injunction found jurisdiction in the District Court pursuant to 28 U. S. C. § 1343 (3) on the authority of the Court's decision in *Carter* v. *Stanton*, 405 U. S. 669 (1972). There we noted in a suit challenging a state welfare regulation that "if the [federal district] court's characterization of the [Fourteenth Amendment] question presented as insubstantial was based on the face of the complaint, as it seems to have been, it was

default, was so patently rational as to require no meaningful consideration.

The Court of Appeals rightly felt obliged to measure petitioners' complaint that the challenged regulation violated the Equal Protection Clause "by discriminating irrationally and invidiously between different classes of recipients"[7] against the standard prescribed by *Dandridge*. The Court of Appeals then reasoned that without the recoupment regulation, those who were subject to it would be preferred over those who had paid their full rent out of their normal monthly grant. The court further reasoned that the regulation provided an incentive for welfare recipients to properly manage their grants and not become delinquent in their rent.[8] It concluded that

error." *Id.*, at 671. The dissent did not question the majority's jurisdictional determination. 462 F. 2d, at 930–931, 932.

[7] App. 5.

[8] "The regulation in question, 18 NYCRR § 352.7 (g) (7), has a rational basis. Since the state has a limited amount of funds available to allocate to welfare recipients, the recoupment regulation is reasonably designed to ensure that there are sufficient funds available to all recipients on the level set by the state legislature. By receiving the advance payment plaintiffs have gotten more than the normal grant. Without the recoupment regulation, the plaintiffs would be in a preferred position over all the other welfare recipients who have paid their full rent out of the normal grant. The purposes of equal protection are served by treating all alike without granting special favor to those who have misappropriated their rent allowance. If there were no recoupment provision, there would be a disincentive for welfare recipients to manage their grants so as to have funds available to pay their rent each month. The recoupment provision encourages proper money management, an entirely acceptable, if incidental, purpose of the welfare legislation.

"No doubt there are other ways in which the state could accomplish the ends served by the use of the recoupment regulation. However it is not for us to evaluate the wisdom of the state's choice of means. If these means are rationally related to a proper end, as they are in this case, we have no power to go further." 471 F. 2d 347, 349–350.

the regulation was rationally based and that no substantial constitutional question within the jurisdiction of the District Court had been presented.

This reasoning with respect to the rationality of the regulation and its propriety under the Equal Protection Clause may ultimately prove correct, but it is not immediately obvious from the decided cases or so "very plain" [9] under the Equal Protection Clause. We think the admonition of *Bell* v. *Hood*, 327 U. S. 678 (1946), should be followed here:

> "Jurisdiction . . . is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction." *Id.*, at 682 (citations omitted).[10]

As was the case in *Bell* v. *Hood*, we cannot "say that the cause of action alleged is so patently without merit

---

[9] *Hart* v. *Keith Exchange*, 262 U. S. 271, 274 (1923).

[10] Once a federal court has ascertained that a plaintiff's jurisdiction-conferring claims are not "insubstantial on their face," *Engineers* v. *Chicago, R. I. & P. R. Co.*, 382 U. S. 423, 428 (1966), "no further consideration of the merits of the claim[s] is relevant to a determination of the court's jurisdiction of the subject matter." *Baker* v. *Carr*, 369 U. S. 186, 199 (1962).

as to justify, even under the qualifications noted, the court's dismissal for want of jurisdiction." *Id.,* at 683. Nor can we say that petitioners' claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court, whatever may be the ultimate resolution of the federal issues on the merits." *Oneida Indian Nation* v. *County of Oneida,* 414 U. S. 661, 666–667 (1974). (Citations omitted.)

## II

Given a constitutional question over which the District Court had jurisdiction, it also had jurisdiction over the "statutory" claim. See *supra,* at 536. The latter was to be decided first and the former not reached if the statutory claim was dispositive. *California Human Resources Dept.* v. *Java,* 402 U. S. 121, 124 (1971); *Dandridge* v. *Williams,* 397 U. S., at 475–476; *Rosado* v. *Wyman,* 397 U. S., at 402; *King* v. *Smith,* 392 U. S. 309 (1968). The constitutional claim could be adjudicated only by a three-judge court, but the statutory claim was within the jurisdiction of a single district judge. *Swift & Co.* v. *Wickham,* 382 U. S. 111 (1965); *Rosado* v. *Wyman, supra,* at 403. Thus, the District Judge, sitting alone, moved directly to the statutory claim. His decision was appealed to the Court of Appeals, although had a three-judge court been convened, an injunction issued, and the statutory ground alone decided, the appeal would be only to this Court under 28 U. S. C. § 1253.

The procedure followed by the District Court—initial determination of substantiality and then adjudication of the "statutory" claim without convening a three-judge court—may appear at odds with some of our prior decisions. See, *e. g., Engineers* v. *Chicago, R. I. & P. R. Co.,* 382 U. S. 423 (1966); *Florida Lime & Avocado Grow-*

ers v. *Jacobsen,* 362 U. S. 73 (1960). But, we think it accurately reflects the recent evolution of three-judge-court jurisprudence, "this Court's concern for efficient operation of the lower federal courts," and "the constrictive view of the three-judge [court] jurisdiction which this Court has traditionally taken." *Swift & Co.* v. *Wickham, supra,* at 128, 129 (citations omitted). In *Rosado* v. *Wyman, supra,* at 403, we suggested that

> "[e]ven had the constitutional claim not been declared moot, the most appropriate course may well have been to remand to the single district judge for findings and the determination of the statutory claim rather than encumber the district court, at a time when district court calendars are overburdened, by consuming the time of three federal judges in a matter that was not required to be determined by a three-judge court. See *Swift & Co.* v. *Wickham,* 382 U. S. 111 (1965)."

It is true that the constitutional claim would warrant convening a three-judge court and that if a single judge rejects the statutory claim, a three-judge court must be called to consider the constitutional issue. Nevertheless, the coincidence of a constitutional and statutory claim should not automatically require a single-judge district court to defer to a three-judge panel, which, in view of what we have said in *Rosado* v. *Wyman, supra,* could then merely pass the statutory claim back to the single judge. See *Kelly* v. *Illinois Bell Telephone Co.,* 325 F. 2d 148, 151 (CA7 1963); *Chicago, Duluth & Georgian Bay Transit Co.* v. *Nims,* 252 F. 2d 317, 319–320 (CA6 1958); *Doe* v. *Lavine,* 347 F. Supp. 357, 359–360 (SDNY 1972); cf. *Bryant* v. *Carleson,* 444 F. 2d 353, 358–359 (CA9 1971). "In fact, it would be grossly inefficient to send a three-judge court a claim which will only be sent immediately back. This inefficiency is especially

apparent if the single judge's decision resolves the case, for there is then no need to convene the three-judge court." *Norton* v. *Richardson,* 352 F. Supp. 596, 599 (Md. 1972) (citations omitted). Section 2281 does not forbid this practice, and we are not inclined to read that statute "in isolation with mutilating literalness . . . ." *Florida Lime & Avocado Growers* v. *Jacobsen, supra,* at 94 (Frankfurter, J., dissenting).

### III

Taking a jaundiced view of the constitutional claim, the dissenters would have the District Court dismiss the Supremacy Clause ("statutory") issue, convene a three-judge court, and reject the constitutional claim, all of this, apparently, as an exercise of the discretion which the District Court, under *Mine Workers* v. *Gibbs,* 383 U. S. 715 (1966), is claimed to have over the pendent federal claim. But *Gibbs* was oriented to state law claims pendent to federal claims conferring jurisdiction on the District Court. Pendent jurisdiction over state claims was described as a doctrine of discretion not to be routinely exercised without considering the advantages of judicial economy, convenience, and fairness to litigants. For, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id.,* at 726 (footnote omitted).[11]

In light of the dissent's treatment of *Gibbs,* several observations are appropriate. First, it is evident from *Gibbs* that pendent state law claims are not always, or even almost always, to be dismissed and not adjudicated.

---

[11] The Court also cited with approval Chief Judge Magruder's concurrence in *Strachman* v. *Palmer,* 177 F. 2d 427, 431 (CA1 1949), advising that " '[f]ederal courts should not be overeager to hold on to the determination of issues that might be more appropriately left to settlement in state court litigation.' " 383 U. S., at 726 n. 15.

On the contrary, given advantages of economy and convenience and no unfairness to litigants, *Gibbs* contemplates adjudication of these claims.

Second, it would reasonably follow that other considerations may warrant adjudication rather than dismissal of pendent state claims. In *Siler* v. *Louisville & Nashville R. Co.*, 213 U. S. 175 (1909) the Court held that the state issues should be decided first and because these claims were dispositive, federal questions need not be reached:

> "Where a case in this court can be decided without reference to questions arising under the Federal Constitution, that course is usually pursued and is not departed from without important reasons. In this case we think it much better to decide it with regard to the question of a local nature, involving the construction of the state statute and the authority therein given to the commission to make the order in question, rather than to unnecessarily decide the various constitutional questions appearing in the record." *Id.*, at 193.

*Siler* is not an oddity. The Court has characteristically dealt first with possibly dispositive state law claims pendent to federal constitutional claims. See, *e. g.*, *Louisville & Nashville R. Co.* v. *Garrett*, 231 U. S. 298, 303–304, 310 (1913); *Ohio Tax Cases*, 232 U. S. 576, 586–587 (1914); *Greene* v. *Louisville & Interurban R. Co.*, 244 U. S. 499, 508–509 (1917); *Louisville & Nashville R. Co.* v. *Greene*, 244 U. S. 522, 527 (1917); *Davis* v. *Wallace*, 257 U. S. 478, 482, 485 (1922); *Chicago G. W. R. Co.* v. *Kendall*, 266 U. S. 94, 97–98 (1924); *Cincinnati* v. *Vester*, 281 U. S. 439, 448–449 (1930); *Hillsborough* v. *Cromwell*, 326 U. S. 620, 629 (1946). The doctrine is not ironclad, see *Sterling* v. *Constantin*, 287 U. S. 378, 393–394, 396 (1932), but it is recurringly ap-

plied,[12] and, at the very least, it presumes the advisability of deciding first the pendent, nonconstitutional issue.

*Gibbs* did not cite *Siler* or like cases, nor did it purport to change the ordinary rule that a federal court should not decide federal constitutional questions where a dispositive nonconstitutional ground is available. The dissent uncritically relies on *Siler* but ignores the preference stated in that case for deciding nonconstitutional claims even though they are pendent and, standing alone, are beyond the jurisdiction of the federal court.[13]

---

[12] Numerous decisions of this Court have stated the general proposition endorsed in *Siler*—that a federal court properly vested with jurisdiction may pass on the state or local law question without deciding the federal constitutional issues—and have then proceeded to dispose of the case solely on the nonfederal ground. See, *e. g.,* *Hillsborough* v. *Cromwell,* 326 U. S. 620, 629–630 (1946); *Waggoner Estate* v. *Wichita County,* 273 U. S. 113, 116–119 (1927); *Chicago G. W. R. Co.* v. *Kendall,* 266 U. S. 94 (1924); *United Gas Co.* v. *Railroad Comm'n,* 278 U. S. 300, 308 (1929); *Risty* v. *Chicago, R. I. & P. R. Co.,* 270 U. S. 378, 387 (1926). These and other cases illustrate in practice the wisdom of the federal policy of avoiding constitutional adjudication where not absolutely essential to disposition of a case. Other decisions have addressed both the federal and state claims in a random fashion, see, *e. g., Atlantic Coast Line R. Co.* v. *Daughton,* 262 U. S. 413, 421–426 (1923); *Southern R. Co.* v. *Watts,* 260 U. S. 519, 525–531 (1923); but they have generally denied relief on both the federal and nonfederal grounds asserted, the nonfederal claim not being dispositive. *Daughton* and *Watts* were both written by Mr. Justice Brandeis, who in his celebrated concurring opinion in *Ashwander* v. *TVA,* 297 U. S. 288, 347 (1936), relied upon *Siler* in summarizing the general rule that "if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter."

[13] The dissent also relies upon *Hurn* v. *Oursler,* 289 U. S. 238 (1933), but *Hurn* expressly took account of one aspect of the rule stated in *Siler:* once a federal court acquires jurisdiction of a case by virtue of the federal questions involved, it may omit to decide the federal

Third, the rationale of *Gibbs* centers upon considerations of comity and the desirability of having a reliable and final determination of the state claim by state courts having more familiarity with the controlling principles and the authority to render a final judgment. These considerations favoring state adjudication are wholly irrelevant where the pendent claim is *federal* but is itself beyond the jurisdiction of the District Court for failure to satisfy the amount in controversy. In such cases, the federal court's rendition of federal law will be at least as sure-footed and lasting as any judgment from the state courts.[14]

---

issues and decide the case on local or state questions alone. With unmistakable clarity, the Court reaffirmed *Siler:*

"The *Siler* and like cases announce the rule broadly, without qualification; and we perceive no sufficient reason· for the exception suggested. It is stated in these decisions as a rule of general application, and we hold it to be such . . . ." *Id.,* at 245.

The dissent properly notes *Hurn*'s warning that *Siler* does not "permit a federal court to assume jurisdiction of a separate and distinct non-federal cause of action . . . ." *Ibid.* However, the *Siler* rule certainly allows the trial court to adjudicate "a case where two distinct *grounds* in support of a single cause of action are alleged, only one of which presents a federal question . . . ." *Id.,* at 246 (emphasis added). We can thus see that here, as in *Hurn,* "[t]he [complaint] alleges the violation of a single right [here the right to nondiscriminatory treatment as to receipt of public assistance]. And it is this violation which constitutes the cause of action. Indeed, the claims of [violation of equal protection and the Social Security Act] so precisely rest upon identical facts as to be little more than the equivalent of different epithets to characterize the same group of circumstances. The primary relief sought is an injunction to put an end to an essentially single wrong, however differently characterized, not to enjoin distinct wrongs constituting the basis for independent causes of action." *Id.,* at 246.

See also *Armstrong Paint & Varnish Works* v. *Nu-Enamel Corp.,* 305 U. S. 315, 324–325 (1938).

[14] In a closely analogous context, this Court has recognized the special capability of federal courts to adjudicate pendent federal

The most relevant cases for our purposes, of course, are those decisions such as *King* v. *Smith,* 392 U. S. 309 (1968), *Rosado* v. *Wyman,* 397 U. S. 397 (1970), and *Dandridge* v. *Williams,* 397 U. S. 471 (1970), where the jurisdictional claim arises under the Federal Constitution and the pendent claim, although denominated "statutory," is in reality a constitutional claim arising under the Supremacy Clause. In these cases the Court has characteristically dealt with the "statutory" claim first "because if the appellees' position on this question is correct, there is no occasion to reach the constitutional issues. *Ashwander* v. *TVA,* 297 U. S. 288, 346–347 (Brandeis, J., concurring); *Rosenberg* v. *Fleuti,* 374 U. S. 449." *Dandridge* v. *Williams, supra,* at 475–476.

In none of these cases did the Court think that with jurisdiction fairly established, a federal court,

claims. In *Romero* v. *International Terminal Operating Co.,* 358 U. S. 354 (1959), an injured Spanish seaman filed suit in federal court claiming damages under the Jones Act and under the general maritime law of the United States for unseaworthiness of the ship, maintenance and cure, and negligence. Jurisdiction was invoked under the Jones Act (46 U. S. C. § 688) and under general federal-question (28 U. S. C. § 1331) and diversity (28 U. S. C. § 1332) jurisdiction. After expressing its view that petitioner alleged a Jones Act claim substantial enough to confer jurisdiction under that statute, the Court held that his general maritime law claims were not cognizable under 28 U. S. C. § 1331. By no means, however, was this the end of the inquiry.

"[T]he District Court may have jurisdiction of [petitioner's general maritime law claims] 'pendent' to its jurisdiction under the Jones Act. Of course the considerations which call for the exercise of pendent jurisdiction of a state claim related to a pending federal cause of action within the appropriate scope of the doctrine of *Hurn* v. *Oursler,* 289 U. S. 238, are not the same when, as here, *what is involved are related claims based on the federal maritime law.* We perceive no barrier to the exercise of 'pendent jurisdiction' in the very limited circumstances before us." 358 U. S., at 380–381 (emphasis added).

under *Gibbs,* must nevertheless decide the constitutional issue and avoid the statutory claim if, upon weighing the two claims, the statutory claim is strong and the constitutional claim weak. On the contrary, Mr. Justice Harlan, writing for the Court in *Rosado* v. *Wyman,* and with the principles of *Gibbs* well in mind, noted that the pendent statutory question was essentially one of federal policy and that the argument for the exercise of pendent jurisdiction was " 'particularly strong.' " 397 U. S., at 404. And *Gibbs* itself observed the "special reason for the exercise of pendent jurisdiction" where the Supremacy Clause is implicated: "the federal courts are particularly appropriate bodies for the application of pre-emption principles." 383 U. S., at 729.

The judgment of the Court of Appeals is reversed and the case remanded to that court for further proceedings consistent with this opinion.

*So ordered.*

MR. JUSTICE POWELL, with whom THE CHIEF JUSTICE and MR. JUSTICE REHNQUIST join, dissenting.

I join the dissenting opinion of MR. JUSTICE REHNQUIST because I believe he expresses the correct view of the appropriate result when a claim over which a district court has no independent jurisdiction is appended to a constitutional claim that has no hope of success on the merits. A wise exercise of discretion lies at the heart of the doctrine of pendent jurisdiction. *E. g., Rosado* v. *Wyman,* 397 U. S. 397, 403 (1970); *Mine Workers* v. *Gibbs,* 383 U. S. 715, 726–727 (1966). Compelling a district court to decide an ancillary claim where the premise for its jurisdiction is a meritless constitutional claim does not impress me as an efficacious performance of a discretionary responsibility.

I write briefly to emphasize my view that the majority has misread the import of the *Gibbs* opinion, *supra,* particularly in the manner in which it links *Gibbs* to *Siler* v. *Louisville & Nashville R. Co.,* 213 U. S. 175 (1909), and like cases. *Gibbs* involved a state claim that arose out of the same transaction as the federal law claim that conferred federal jurisdiction. The majority apparently reads *Gibbs* and *Siler* together as mandating decision of the state law claim without regard to the frailty of the federal claim on which federal jurisdiction rests. See *ante,* at 547, 549–550. In other words, the majority opinion appears to be saying that a federal constitutional claim as marginal as the one at issue here is capable of supporting pendent federal jurisdiction over a *state* claim and, indeed, that the state claim is to be decided to the exclusion of the federal issue. As I view it, that is a particularly erroneous interpretation of the pendent jurisdiction doctrine. That reading would broaden federal question jurisdiction to encompass matters of state law whenever an imaginative litigant can think up a federal claim, no matter how insubstantial, that is related to the transaction giving rise to the state claim.

This extension of *Gibbs* is quite unnecessary, since we are not confronted with a case where the pendent claim is a matter of state law. The Court's dictum could nevertheless prompt other courts to follow it. In view of this potential mischief, I repeat a quotation from *Gibbs* relied on by my Brother REHNQUIST which indicates how far the Court has departed from the rationale of that 1966 precedent:

> "[R]ecognition of a federal court's wide latitude to decide ancillary questions of state law does not imply that it must tolerate a litigant's effort to impose upon it what is in effect only a state law case.

> Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed." 383 U. S., at 727.

The correct reading of *Gibbs,* as a matter of common sense and in light of deeply rooted notions of federalism, is that the federal claim must have more than a glimmer of merit and must continue to do so at least until substantial judicial resources have been committed to the lawsuit. If either of those conditions is not met, a district court has no business deciding issues of state law. District courts are not expositors of state law when jurisdiction is not based on diversity of citizenship.

MR. JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE and MR. JUSTICE POWELL join, dissenting.

The Court's decision in this case resolves a legal question and is necessarily and properly cast in legal terms. According to the Court, a federal district court, having acquired jurisdiction over a "not wholly insubstantial" federal claim, has power to decide other related claims which lack an independent jurisdictional basis. Applying this analysis to the present case, the Court finds the equal protection claim pleaded by petitioners sufficient to satisfy this somewhat hazy definition of "substantiality" and appears to approve the District Court's exercise of pendent jurisdiction over a claim alleging conflict between state and federal welfare regulations. But since we have been admonished that we may not shut our eyes as judges to what we know as men, the practical as well as the legal consequences of this decision should be squarely faced.

In the wake of *King* v. *Smith,* 392 U. S. 309 (1968), and *Rosado* v. *Wyman,* 397 U. S. 397 (1970), the lower federal courts have been confronted by a massive influx of cases challenging state welfare regulations. The principal

claim of plaintiffs in the typical case is that the state regulation conflicts with governing federal regulations and is invalid under the Supremacy Clause of the United States Constitution. This allegation presents a federal claim sufficient to satisfy the first jurisdictional requirement of 28 U. S. C. § 1331,[1] the so-called "federal question" jurisdictional statute, but many plaintiffs find the statute's second requirement, that the matter in controversy exceed the sum of $10,000, impossible to meet. Normally, therefore, these cases would be left, as Congress surely understood when it imposed this jurisdictional limitation, to state courts likewise charged with enforcing the United States Constitution.

To avoid this natural disposition, however, plaintiffs in these cases have turned to 28 U. S. C. § 1343, a more narrowly drawn federal jurisdictional statute requiring no minimum jurisdictional amount. The provision of 28 U. S. C. § 1343 relevant to this case reads:

> "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
>
> .    .    .    .    .
>
> "(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States . . . ."

---

[1] The relevant provision of 28 U. S. C. § 1331 reads as follows: "(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."
The jurisdictional amount was raised from $3,000 to $10,000 in 1958.

This Court, however, has never held, and does not hold now, that the Supremacy Clause of the Constitution itself provides a basis for jurisdiction under this section. The Court escapes the need for such a decision by granting the federal courts power to hear the Supremacy Clause claim under a theory of pendent jurisdiction. Finding that plaintiffs here have pleaded an equal protection claim sufficiently substantial to satisfy the requirements of 28 U. S. C. § 1343, the Court seems to suggest that consideration of the Supremacy Clause claim may follow as a matter of course. Since I do not believe that the equal protection claim was sufficient to establish jurisdiction under § 1343, or that the doctrine of pendent jurisdiction was appropriately invoked in this case, I dissent.

I

The history of pendent jurisdiction in this Court is long and complex. Its roots go back to *Osborn* v. *Bank of the United States,* 9 Wheat. 738 (1824), where the Court said that the jurisdiction of the federal courts extended not only to federal issues themselves but also to nonfederal issues essential to the settlement of the federal claim. No subsequent decision has cast any doubt upon the wisdom of Mr. Chief Justice Marshall's exposition in that case, since a different result would have forced substantial federal cases into state courts for adjudication simply because they involved nonfederal issues as well as federal ones.[2] The doctrine was

---

[2] "Under this construction, the judicial power of the Union extends effectively and beneficially to that most important class of cases, which depend on the character of the cause. On the opposite construction, the judicial power never can be extended to a whole case, as expressed by the constitution, but to those parts of cases only which present the particular question involving the construction of

expanded in *Siler* v. *Louisville & Nashville R. Co.,* 213 U. S. 175 (1909), where the Court upheld the power of a district court, having founded its jurisdiction upon federal constitutional claims, to bypass the constitutional questions and to decide an issue of local law. The Court said that the lower court "had the right to decide all the questions in the case, even though it decided the Federal questions adversely to the party raising them, or even if it omitted to decide them at all, but decided the case on local or state questions only." [3] But the Court at the same time cautioned: "Of course, the Federal question must not be merely colorable or fraudulently set up for the mere purpose of endeavoring to give the court jurisdiction." [4]

---

the constitution or the law. We say it never can be extended to the whole case, because, if the circumstance that other points are involved in it, shall disable Congress from authorizing the Courts of the Union to take jurisdiction of the original cause, it equally disables Congress from authorizing those Courts to take jurisdiction of the whole cause, on an appeal, and thus will be restricted to a single question in that cause; and words obviously intended to secure to those who claim rights under the constitution, laws, or treaties of the United States, a trial in the federal Courts, will be restricted to the insecure remedy of an appeal upon an insulated point, after it has received that shape which may be given to it by another tribunal, into which he is forced against his will." *Osborn* v. *Bank of the United States,* 9 Wheat. 738, 822–823 (1824).

[3] 213 U. S., at 191.

[4] *Id.,* at 191–192. In *Siler* the Court specifically noted that the constitutional claim was not fraudulently pleaded to confer jurisdiction over the pendent claim.

The Court today, by its heavy emphasis on deciding state issues in preference to constitutional ones, *ante,* at 546–547, seems to imply that this doctrine should be controlling even when a constitutional claim *is* pleaded "for the mere purpose of endeavoring to give the court jurisdiction." I cannot agree. The numerous cases cited in

556

The Court returned to the question of pendent jurisdiction in *Hurn* v. *Oursler*, 289 U. S. 238 (1933), and *Levering & Garrigues Co.* v. *Morrin*, 289 U. S. 103 (1933). The Court in both cases agreed that a substantial federal question was necessary to confer initial jurisdiction on the district court,[5] a test that must be met whether or not pendent jurisdiction is involved, and then in *Hurn* further attempted to define the necessary relationship between the pendent claim and the claim conferring jurisdiction. According to the Court, a lower federal court could exercise pendent jurisdiction over a separate

the Court's opinion stand for the long-recognized and sensible policy that cases should be decided on nonconstitutional grounds where possible; but they do not stand for the proposition that claims which would be otherwise dismissed under the principles discussed in *Mine Workers* v. *Gibbs*, 383 U. S. 715 (1966), should be heard simply to avoid the constitutional claim which conferred jurisdiction in the first place. See n. 11, *infra*. In such cases the competing and equally important policy of safeguarding the limited jurisdiction of the federal courts is entitled to more weight than the Court appears to give it.

[5] The Court in *Levering, supra*, stated:

"Whether an objection that a bill or a complaint fails to state a case under a federal statute raises a question of jurisdiction or of merits is to be determined by the application of a well settled rule. If the bill or the complaint sets forth a substantial claim, a case is presented within the federal jurisdiction, however the court, upon consideration, may decide as to the legal sufficiency of the facts alleged to support the claim. But jurisdiction, as distinguished from merits, is wanting where the claim set forth in the pleading is plainly unsubstantial. The cases have stated the rule in a variety of ways, but all to that effect. . . . And the federal question averred may be plainly unsubstantial either because obviously without merit, or 'because its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.'" 289 U. S., at 105–106.

*ground* alleged in support of a single cause of action, but not over a separate cause of action itself.[6]

The Court's most recent extensive treatment of the subject occurred in *Mine Workers* v. *Gibbs,* 383 U. S. 715 (1966). Because *Hurn* had spoken in terms of "causes of action," a term which was superseded by the adoption of the Federal Rules of Civil Procedure, *Gibbs* redefined the necessary relation of the federal and nonfederal claims in more understandable terms. Restating the substantiality test in pretty much the language of the earlier cases, the Court then continued:

> "The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." *Id.,* at 725 (footnote omitted) (emphasis in original).

This language served to clarify jurisdictional questions which had proved troublesome after *Hurn* v. *Oursler.* But, importantly, the decision then went on to emphasize

---

[6] *Hurn* v. *Oursler,* 289 U. S. 238, 245–246 (1933):

"But the rule does not go so far as to permit a federal court to assume jurisdiction of a separate and distinct non-federal cause of action because it is joined in the same complaint with a federal cause of action. The distinction to be observed is between a case where two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question, and a case where two separate and distinct causes of action are alleged, one only of which is federal in character. In the former, where the federal question averred is not plainly wanting in substance, the federal court, even though the federal ground be not established, may nevertheless retain and dispose of the case upon the non-federal *ground;* in the latter it may not do so upon the non-federal *cause of action.*" (Emphasis in original.)

that power to hear claims lacking an independent juris-
dictional basis should not be exercised indiscriminately.
The Court reiterated that "pendent jurisdiction is a doc-
trine of discretion, not of plaintiff's right," *id.*, at 726,
and urged that the district courts exercise caution
not to abuse that discretion. For example, the Court
suggested that

> "if the federal claims are dismissed before trial,
> even though not insubstantial in a jurisdictional
> sense, the state claims should be dismissed as well."
> *Ibid.* (footnote omitted).

Furthermore, the Court stressed that the relative impor-
tance of the claims should be considered:

> "Similarly, if it appears that the state issues sub-
> stantially predominate, whether in terms of proof,
> of the scope of the issues raised, or of the compre-
> hensiveness of the remedy sought, the state claims
> may be dismissed without prejudice and left for
> resolution to state tribunals." *Id.*, at 726–727.

Although the Court's language in *Gibbs* necessarily
discussed the. relationship between federal and state
claims, much of the opinion's rationale is applicable when
pendent jurisdiction is sought over federal claims lacking
an independent jurisdictional basis.[7] Of course, a

---

[7] The Court in *Mine Workers* v. *Gibbs*, 383 U. S., at 727, also
stated:

"[R]ecognition of a federal court's wide latitude to decide ancillary
questions of state law does not imply that it must tolerate a liti-
gant's effort to impose upon it what is in effect only a state law
case. Once it appears that a state claim constitutes the real body
of a case, to which the federal claim is only an appendage, the state
claim may fairly be dismissed."

I also see no reason why federal courts should be required to
"tolerate" efforts to impose upon them federal cases which Congress
has chosen to leave to the state courts.

decision to deny pendent jurisdiction on the ground that state courts should consider questions of state law naturally involves issues relevant to the question of abstention, a consideration not especially applicable when the pendent claim primarily involves questions of federal law. But the presence of federal questions should not induce federal courts to expand their proper jurisdiction. As previously noted, Congress, by requiring a minimum dollar amount for federal question jurisdiction, made a legislative decision to leave certain claims to state courts. Considerations of convenience and judicial economy may justify hearing those claims when genuine federal business, as contrasted to weak claims intended merely to secure jurisdiction, is before the federal court, but these considerations should be subordinated to considerations of federalism when the claims without independent jurisdiction constitute "the real body" of the case. In this situation the lower courts should remember that federalism embodies

> "a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger* v. *Harris*, 401 U. S. 37, 44 (1971).

The majority rejects this analysis, seemingly finding that state courts' greater familiarity with state law is the only reason for declining pendent jurisdiction under *Gibbs*. But Congress left to state courts not only those claims involving state law but also those claims involving federal law which it felt did not merit the time of federal courts. This Court now says that federal courts should hear those cases anyway since they can

render "at least as sure-footed" an interpretation of federal law and are "'particularly appropriate bodies'" to do so. This opinion, while it undoubtedly reflects the view of this Court, does not reflect with equal accuracy the purpose of Congress.

In *Rosado* v. *Wyman*, 397 U. S. 397 (1970), heavily relied upon by the Court to support its position, there was no intimation that the constitutional claim was a weak one pleaded for the purpose of securing federal jurisdiction over a stronger claim. Rather the constitutional claim proved moot. This Court plainly stated:

> "Unlike insubstantiality, which is apparent at the outset, mootness, frequently a matter beyond the control of the parties, may not occur until after substantial time and energy have been expended looking toward the resolution of a dispute that plaintiffs were entitled to bring in a federal court." *Id.,* at 404.

Thus *Rosado* does not in any way settle the issue before the Court today. Its holding offers no aid in resolving the real and practical issues that the Court confronts in this case.

The *Gibbs* decision must be understood in its separate parts. First, the Court held that jurisdiction could not attach unless the claim for which jurisdiction was asserted met the requirement of substantiality and unless the pendent claim was sufficiently related to the jurisdictional claim to constitute a single case under the Constitution. Second, the Court admonished that this jurisdiction, even if found to exist, should be exercised judiciously. The relatively permissive standards applied to the issue of whether the Court *could* consider a pendent claim were not to guide the ultimate decision of whether the Court *should* consider the pendent claim. Only where "considerations of judicial economy, conven-

ience and fairness to litigants" were served and where the pendent claim did not predominate in scope or worth over the judicial claim, was the doctrine of pendent jurisdiction to be applied. 383 U. S., at 726. While I am convinced that the District Court lacked jurisdiction over an equal protection claim as thin as this one, even if I am wrong on that point it seems clear to me that its decision to exercise pendent jurisdiction over the Supremacy Clause claim was not based on the discretionary considerations outlined in *Gibbs, supra.*

## II

The District Court simply found the equal protection claim in this case to be "substantial" and proceeded without further discussion to the statutory claim. The Court of Appeals, reversing the determination of the District Court, found the claim to be insubstantial and therefore had no need to go further. This Court merely disagrees on the question of substantiality, reinstating the District Court's jurisdiction. Unfortunately, this process of analysis seems to me to be wrong both in its treatment of the jurisdictional question and in its failure to treat the discretionary aspects of pendent jurisdiction.

Whatever legal terminology is applied to the equal protection claim of the plaintiffs in this case, the one clear fact is that the claim is not very good. In brief, petitioners, who are recipients of public assistance under the Aid to Families with Dependent Children program, all received funds from New York, over and above their usual monthly grants, to prevent eviction from their places of lodging for nonpayment of rent. The State, pursuant to a provision of the New York Code of Rules and Regulations challenged in the District Court, sought to recover these unusual expenditures by making deductions over the next succeeding months from petitioners'

normal monthly grants. In their complaint petitioners contended that the New York recoupment procedure deprived them of equal protection of the laws.[8]

One searches in vain, either in petitioners' brief or in the opinions of the District Court or this Court, for any reason why this claim meets even a minimal test of substantiality. It would seem extraordinary if, having paid petitioners more than their normal monthly entitlement in order to meet an emergency situation, the State had not sought to recoup the payments over a period of time. The District Court, finding the claim substantial, cited *Bradford* v. *Juras*, 331 F. Supp. 167 (Ore. 1971), a decision by a three-judge district court which found jurisdiction on a similar constitutional claim and then decided the case on statutory grounds. In *Bradford,* however, the Court simply stated that it had jurisdiction under 28 U. S. C. § 1343 (3) without further discussion.[9]

The opinion of this Court sheds no more light than did the opinion of the District Court. The Court simply states:

> "This reasoning with respect to the rationality of the regulation and its propriety under the Equal Protection Clause may ultimately prove correct, but it is not immediately obvious from the decided cases

---

[8] The portion of the petitioners' complaint setting forth their equal protection claim states in full:

"Said regulation irrationally and invidiously discriminates against plaintiff victims of eviction. No basis exists in law or fact, consistent with the purposes of the Social Security Act, for reducing the level of payments to plaintiffs who are then forced to live far below the subsistence levels provided to all other persons. Said regulation applies a wholly different standard in determining the grant levels of plaintiffs than the income resource and exemptions from levy standard, applicable to all other persons in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution."

[9] 331 F. Supp., at 168.

or so 'very plain' under the Equal Protection Clause."
*Ante,* at 542.

But cases such as *Dandridge* v. *Williams,* 397 U. S. 471
(1970), have largely discredited attacks on legislative
decisions about the apportionment of limited state wel-
fare funds.   At least where the Court has not found a
penalty based on race or considerations such as interstate
travel, the legislative judgment is upheld whenever a
"conceivable rational basis" exists.   Although *Dandridge*
did not "suspend the operation of the Equal Protection
Clause" in this area, it assuredly makes this particular
claim a marginal one.[10]

I therefore cannot agree that the equal protection claim
pleaded here was sufficient to confer jurisdiction on the
District Court.   Even assuming that the lower court may
refer only to the pleadings in making its determination
on the question of jurisdiction, the analysis need not be
made, as the majority seems to imply, in a legal vacuum.
To say that previous decisions have not foreclosed a
question unless a prior case "specifically deal[s]" with
the same regulation neglects the second branch of the
test enunciated in *Levering & Garrigues Co.* v. *Morrin,*
289 U. S. 103 (1933), and repeated in later cases, that a

---

[10] The Court in *Dandridge* stated:

"Conflicting claims of morality and intelligence are raised by op-
ponents and proponents of almost every measure, certainly including
the one before us.   But the intractable economic, social, and even
philosophical problems presented by public welfare assistance pro-
grams are not the business of this Court.   The Constitution may
impose certain procedural safeguards upon systems of welfare ad-
ministration, *Goldberg* v. *Kelly,* [397 U. S. 254 (1970)].   But the
Constitution does not empower this Court to second-guess state offi-
cials charged with the difficult responsibility of allocating limited pub-
lic welfare funds among the myriad of potential recipients.   Cf.
*Steward Mach. Co.* v. *Davis,* 301 U. S. 548, 584–585; *Helvering* v.
*Davis,* 301 U. S. 619, 644."   397 U. S., at 487.

claim is insubstantial because "obviously without merit."
*Id.*, at 105. Under today's rationale it appears sufficient
for jurisdiction that a plaintiff is able to plead his claim
with a straight face. But a district court should be able
to dismiss for want of jurisdiction any claim that plainly
carries no hope of success on the merits. This lack of
promise in turn could be evident from recent decisions of
this Court rejecting claims with a similar thesis or laying
down rules which would clearly require dismissal on the
merits.

Assuming, however, that the District Court here did
have jurisdiction, it seems clear to me that under *Gibbs*
the equal protection claim should not support the
Supremacy Clause claim also asserted by petitioners.
The test for exercising discretion must be a practical
one, involving the type of judgments that a reasonable
lawyer, evaluating the respective strengths and weak-
nesses of his case, might undertake. In this case it is
highly improbable that a lawyer familiar with this
Court's cases would place much faith in the success of
his equal protection claim. In fact, examination of the
complaint itself shows that substantially more attention
was paid to the Supremacy Clause claim than to the claims
under the Fourteenth Amendment. At the very least,
the District Court, before it chose to exercise pendent
jurisdiction, should have made an identifiable determina-
tion that the Equal Protection Clause was not simply
asserted for the purpose of giving the Court jurisdiction
over the heart of the plaintiffs' case. To my mind this
seems to be a classic case of the statutory tail wagging
the constitutional dog.

### III

Thus, even if the Court of Appeals may have erro-
neously resolved the question of jurisdiction, the result it
reached was correct in terms of the wise exercise of juris-
diction. Whether the equal protection claim pleaded in

this case meets the threshold of substantiality for jurisdiction in the federal courts, the claim surely should not convince a district court that its main purpose was anything other than to secure jurisdiction for the more promising Supremacy Clause claim. Presented with this situation, the District Court should have declined to exercise pendent jurisdiction over the Supremacy Clause claim and referred the equal protection claim to a three-judge court.[11] Since its failure to do so seems to me an abuse of discretion under *Gibbs,* I dissent.

[11] Petitioners originally sought to convene a three-judge court to consider their constitutional claims but later withdrew that request. Pursuant to a stipulation between the parties, the case was then tried before a single judge on the issue of the claimed statutory conflict only. *Goosby* v. *Osser,* 409 U. S. 512 (1973), specifies that a three-judge court must be convened to hear constitutional questions within its jurisdiction if they are "substantial." It is true, of course, that federal courts commonly avoid deciding constitutional questions when alternative grounds for decision are available. See, *e. g., Ashwander* v. *TVA,* 297 U. S. 288, 346–347 (1936) (Brandeis, J., concurring). But application of that principle to cases in which the constitutional claim is pleaded primarily to confer jurisdiction over a pendent claim would lead to circular reasoning. Under that theory a claim for which Congress provided no jurisdiction and which a single judge determined to be improperly brought into federal court would become a *preferred* ground for decision simply because the court wished to avoid the claim over which Congress granted jurisdiction in the first place. To turn to the pendent claim when pendent jurisdiction is properly assumed under *Gibbs* may be appropriate, but the presence of a constitutional claim which might therefore be avoided should not itself be an *independent* basis for hearing the pendent claim.

In rare cases, of course, a three-judge court may disagree with the single judge's view that a constitutional claim lacks merit and resolve the constitutional issue in the plaintiff's favor. At that point, the plaintiff will have his relief, and the case need go no further. Concededly, a constitutional decision will have been rendered when a statutory decision might have been possible, but that cost, in the few cases where it is likely to arise, seems less expensive than the cost of allowing federal jurisdiction to be unnecessarily expanded.