Charles HAYES and John Goebel and all other persons similarly situated, Plaintiffs-Appellants,

v.

Wayne A. STANTON, and Elizabeth Samkowski et al., Defendants-Appellees.

No. 74–1795.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1974.

Decided March 4, 1975.

As Amended March 21, 1975.

**134**

Harold R. Berk, Indianapolis, Ind., Patricia A. Butler, Los Angeles, Cal., for plaintiffs-appellants.

Theodore L. Sendak, Atty. Gen., Anna S. Rominger, Deputy Atty. Gen., Robert W. Geddes, Indianapolis, Ind., for defendants-appellees.

Before HASTINGS, Senior Circuit Judge, SWYGERT and STEVENS, Circuit Judges.

SWYGERT, Circuit Judge.

The question in this appeal is whether by enacting Pub.L. No. 93–233, § 13(c) Congress has mandated that states participating in the Medicaid program provide recipients of a mandatory State Supplemental Assistance payment with Medicaid coverage and benefits without the payment of a "spend down" or demonstration of need for any particular monetary amount of medical services.[1] At issue is the legality of Indiana Department of Public Welfare Bulletin 285C issued on July 24, 1974 which requires such a "spend down."

Plaintiffs' class action complaint seeks declaratory and injunctive relief establishing that they are not required to make a "spend down" payment as a condition for receipt of Medicaid benefits. The complaint was dismissed for failure to state a claim upon which relief could be granted though plaintiffs construe the ruling as a grant of summary judgment since matters outside the pleadings were considered by the court. We reverse the judgment of the district court.

I

Plaintiffs are a class of severely disabled persons who are recipients of federal Supplemental Security Income and Indiana State Supplemental Assistance. Plaintiffs receive the federal Supplemental Security Income assistance pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. State Supplemental Assistance is paid to plaintiffs pursuant to Ind.Code 12–1–7.1–1 and Pub.L. No. 93–66, § 212, 87 Stat. 155. The federal statute makes such payments mandatory to any aged, blind, or disabled individual who would have less

---

1. The spend down payment required of a State Supplemental Assistance recipient is the amount by which his total income, less standard allowances, exceeds the flat maintenance allowance established under the federal Supplemental Security Income program.

income under the newly federalized Supplemental Security Income program in January 1974 than they did under the prior Aid to the Permanently and Totally Disabled program in December 1973. Plaintiffs, as recipients of federal Supplemental Security Income and mandatory State Supplemental Assistance payments, contend that they are automatically eligible and entitled to Medicaid coverage without any further requirements.

Representing the class are Charles Hayes and John Goebel, Medicaid claimants who are both severely disabled and require an inordinate quantity of medical services and medications to control and treat their disabling conditions. Hayes' total income per month amounts to two hundred fifty-six dollars and sixty cents ($256.60) which includes one hundred ninety-six dollars and ten cents ($196.10) in Old-Age, Survivors and Disability Insurance benefits and sixty dollars and fifty cents ($60.50) in State Supplemental Assistance for the disabled. Goebel's total income per month is two hundred seventy-nine dollars and eighty cents ($279.80) which includes two hundred fifty-two dollars and ninety cents ($252.90) in Old-Age, Survivors and Disability Insurance benefits and twenty-six dollars and ninety cents ($26.90) in State Supplemental Assistance for the disabled.[2]

Before July 24, 1974 the Medicaid standard of financial eligibility for Hayes, Goebel, and other aged, blind, or disabled persons who received a mandatory state supplemental payment was set at their individual standard of need established under the former categorical assistance program. Under this standard Hayes was determined to have needs of two hundred forty-five dollars and twenty-five cents ($245.25) per month, and Goebel to have needs of two hundred sixty-three dollars and ninety cents

($263.90) per month. Since their respective incomes were less than these respective individualized needs, they both received Medicaid benefits and coverage from early in the year 1972 through and including August 31, 1974. Medicaid coverage and benefits were provided to them without any cost during that entire period of eligibility.

On July 24, 1974 defendant-appellee Stanton issued Bulletin 285C of the Indiana Department of Public Welfare. The bulletin changed the procedure for determining financial eligibility for Medicaid coverage. Instead of calculating a recipient's needs on an individualized basis, it required that a "flat maintenance allowance shall be used for all Medicaid recipients who are over age 65, blind or disabled." The new flat maintenance allowance was set at one hundred forty-six dollars ($146.00) per month, the amount of a federal Supplemental Security Income payment, for a single individual or a married person not living with a spouse.[3]

Under the new procedure, an aged, blind, or disabled person is eligible for Medicaid only if his total income, less standard allowances, does not exceed the flat maintenance allowance of one hundred forty-six dollars ($146.00). If his income exceeds the flat allowance of one hundred forty-six dollars ($146.00), he will only be eligible for Medicaid if he makes a spend down payment to the county department of public welfare representing the difference between his income and the flat maintenance level of one hundred forty-six dollars ($146.00). Eligibility for this spend down provision is further conditioned on the demonstration of monthly medical expenses being accrued by the recipient in an amount at least equal to the aforestated difference between his income and the maintenance allowance level.

---

2. Prior to implementation of the newly federalized Supplemental Security Income program on January 1, 1974, both Hayes and Goebel received Aid to the Permanently and Totally Disabled (APTD) pursuant to Title XIV of the Social Security Act, 42 U.S.C. § 1351 et seq. and Ind.Code 12–1–7–29 et seq.

3. This amount is presently $175.00. For the purpose of this discussion, however, the $146.00 figure as set forth in Bulletin 285C will be used since the amended maintenance allowance has little effect on the issue before this court.

Bulletin 285C thus substitutes $146.00 as the standard of financial eligibility for Medicaid for the individualized standards previously calculated for Hayes and Goebel. Under this new lower standard, the Medicaid claimants' income exceeded the new standard and they were informed that a spend down payment reducing their available income to the $146.00 level would have to be made if they were to continue receiving Medicaid coverage and benefits.

Based on Bulletin 285C, Hayes was told by his caseworker that he would have to spend down thirty-four dollars ($34.00) per month to continue receiving Medicaid. Goebel was told by his caseworker that he would have to spend down ninety-two dollars ($92.00) per month in order to continue receiving Medicaid coverage and benefits. Satisfaction of the spend down payment provision would require that Hayes return part of his State Supplemental Assistance to the welfare administrators. It would require that Goebel return his State Supplemental Assistance to the welfare administrators and also pay part of his Old Age, Survivors and Disability Insurance benefits to the welfare administrators.

Since the Medicaid claimants could not afford (because of their poverty) to pay the required spend down amounts, they were not provided with Medicaid cards for September 1974. These cards are necessary to obtain drugs and medical services from suppliers under the Medicaid program, and without a Medicaid card plaintiffs could not purchase all of the multitude of medical services and medications that they must obtain to control and treat their disabling conditions.

The legality of defendants' imposition of a spend down as a prerequisite to plaintiffs' receipt of Medicaid benefits must be determined on the basis of the federal statutory scheme which regulates plaintiffs' eligibility for Medicaid coverage.

II

Congress provides assistance to financially needy persons who are aged (65 or over), blind, or disabled through a complex statutory scheme. (This assistance flows through the state public welfare program.) Relevant to our case are those statutory provisions which determine the cash benefits to which the needy aged, blind, and disabled are entitled and also the Medicaid eligibility and coverage for this group. It is the combination and interrelationship of these provisions which underlie the present problem.

On October 30, 1972 Congress enacted Pub.L. No. 92–603, 42 U.S.C. § 1396a, effective January 1, 1974, which federalized the state cash assistance programs for the adult categories of the blind, aged, and disabled under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. This federal program, known as the Supplemental Security Income program, converted a myriad of state plans in the adult categories to one nationally uniform system by providing a flat maintenance allowance to all recipients. Thus, no longer were an individual's "special needs" the criteria by which the amount of cash assistance was determined. All individuals eligible under the Supplemental Security Income program were to receive a sufficient sum to ensure an income equal to the program's standardized income level of $140.00.[4] Congress recognized the adverse impact the program would have on those recipients of state aid whose needs had been assessed previously at an amount in excess of the flat maintenance allowance, but determined that the states, through an optional State Supplemental Assistance program, could choose to supplement the federal payments so that the sum received by those on the state welfare rolls before January 1, 1974 would not be decreased as a result of the new federal program.

Congress, however, became apprehensive that those persons who, having dem-

---

**4.** The sum of $140.00 was increased to $146.00 as of July 1, 1974.

onstrated special needs under state assistance programs, would receive decreased assistance under the federal program. It responded to this concern by enacting Pub.L. No. 93–66, § 212, 87 Stat. 155, which amends Pub.L. No. 92–603 by mandating the states to provide a supplemental payment to any recipient under a former state categorical assistance program whose income would be lower in January 1974 under the federal program than it was in December 1973 under the state program. The supplemental payment is calculated to be an amount by which the recipient's December 1973 income exceeds the amount of his federal benefit plus other income. In accordance with this congressional mandate, the State of Indiana enacted Ind. Code 12–1–5–1, 12–1–6–1, and 12–1–7.-1–1 which provide for supplemental payments to the aged, blind, and disabled.

Neither the protective intent of Congress nor the mandate embodied in Pub.L. No. 93–66 is disputed by the parties to this litigation. They recognize that Congress sought to maintain the status quo of recipients of state categorical assistance who otherwise would be adversely affected by implementation of the new Supplemental Security Income program. In furthering this Congressional purpose, Indiana has complied with Congress' mandate by providing plaintiffs (as members of the group that Congress sought to protect) with State Supplemental Assistance under the State Supplemental Assistance program.

Plaintiffs contend that defendants, however, have frustrated this congressional purpose in their interpretation and application of statutory provisions pertinent to Medicaid coverage for the plaintiffs and the class of welfare recipients they represent. Whether this is true depends on whether Congress intended to extend its protective legislation so as to secure for plaintiffs special treatment with respect to Medicaid coverage as it had secured for them mandatory State Supplemental Assistance. That is the precise question presented by this case. To answer it we must examine the statutory provisions which determine Medicaid eligibility and coverage for participants in the Supplemental Security Income program.

### III

When Congress established the Supplemental Security Income program in Pub.L. No. 92–603 it was concerned with providing recipients of this program medical assistance available under the Medicaid program. Therefore, Congress included in the statute three alternate standards upon which the states must determine Medicaid eligibility for the needy, blind or disabled. The standard adopted by the State of Indiana allows a state to restrict Medicaid eligibility only to those Supplemental Security Income recipients who are financially and categorically eligible under the state's January 1, 1972 standards. Ind.Code 12–1–7–15(a)(4).[5] This criterion for Medicaid eli-

---

**5.** The January 1, 1972 standard for categorical assistance adopted by the State of Indiana pursuant to Pub.L. No. 92–603 for the purpose of determining Medicaid eligibility and coverage was an individualized standard based on the "special needs" of recipients of state assistance. After the implementation of Bulletin 285C a flat standardized income level was used as the basis for determining Medicaid eligibility and coverage.

It should be noted that a state's January 1, 1972 standard was intended to be the state's eligibility standard for cash assistance or the medical assistance standard for the medically needy program, whichever is higher. S.Rep. 92–1230, 92d Cong. 1st Sess., at p. 22. Before January 1, 1974, any person who demonstrated the state's standard of financial need and who satisfied the eligibility requirements of categorical assistance, was automatically eligible for Medicaid. Such persons were considered "categorically needy"—thereby entitling them to automatic Medicaid eligibility and coverage. For those whose income was in excess of the state financial standard, thereby precluding automatic eligibility for Medicaid, but who incurred high medical expenses sufficient to meet the state's medical assistance standard, the state could, by adopting an optional program for the medically needy, provide them Medicaid coverage if the otherwise ineligible person would spend down his income which was in excess of the state's financial standard of assistance. 42 U.S.C. § 1396a(a)(10), (a)(17). These claimants were labeled "medically needy." Indiana never

gibility was intended to allow states that had monetary eligibility levels below the Supplemental Security Income monetary standard to retain the lower pre-existing standard in order to limit Medicaid eligibility. H.Rep. 92–231, 92d Cong. 1st Sess., at 197, 300–01. 1972 U.S.Code Cong. & Admin.News at pp. 5182–83, 5286–87; S.Rep. 92–1230, 92d Cong. 1st Sess., at 222. Congress did not intend, however, to permit Supplemental Security Income recipients who did not meet their respective state's January 1, 1972 financial standard to be precluded from participation in the Medicaid program. Congress, therefore, conditioned a state's use of its January 1, 1972 financial standard on the inclusion of a spend down provision in the state Medicaid plan. See Pub.L. No. 92–603, § 209(f), 42 U.S.C. § 1396a(f). Under this provision a state using its January 1, 1972 Medicaid eligibility standard after January 1, 1974 is required to allow those recipients who have income above the eligibility level but who have high medical expenses to become eligible for Medicaid. Thus, the spend down provision is a device by which Congress has expanded Medicaid coverage to include recipients with high medical expenses who because of their income would not otherwise be eligible for medical assistance.

As noted above, the passage of Pub.L. No. 93–66, § 212 mandating State Supplemental Assistance payments to Supplemental Security recipients whose income in January 1974 would be lower than it was under categorical assistance programs in December 1973, amended Pub.L. No. 92–603 and created the group of recipients who constitute plaintiffs' class in the present action. These recipients, by definition, receive income in excess of the Supplemental Security Income standardized level. On the basis of their income level, the bulletin under attack has cast plaintiffs into that group of recipients whose eligibility for Medicaid assistance depends on the spending down of income in excess of the state's eligibility level. The rationale of a statutory scheme which grants supplemental financial assistance to aged, blind, or disabled individuals who have demonstrated special needs above and beyond those contemplated by the Supplemental Security Income flat maintenance allowance, and then requires these needy persons to return most of these supplemental payments in order to receive medical assistance, the demonstrated need of which justified the supplemental assistance in the first place, is dubious. Whether Congress intended such an anomaly was answered by the enactment of Pub.L. No. 93–233, § 13(c), 87 Stat. 965.[6]

Pub.L. No. 93–233, § 13(c) provides that medical assistance shall be provided to any person who is receiving or is entitled to receive mandatory state supplemental payments. Section 13(c)(2) of this law requires that the mandatory

---

adopted the medically needy classification and, thus, never imposed a spend down as a prerequisite to Medicaid eligibility prior to Bulletin 285C.

**6.** Pub.L. No. 93–233, § 13(c) states:

(c) In addition to other requirements imposed as conditions for the approval of any State plan under title XIX of the Social Security Act, there is hereby imposed (effective January 1, 1974) the requirement (and each such State plan shall be deemed to require) that medical assistance under such plan shall be provided to any individual—

(1) for any month for which there (A) is payable to such individual a supplementary payment pursuant to an agreement entered into between the State and the Secretary of Health, Education, and Welfare under section 212(a) of Public Law 93–66, and (B)

would be payable with respect to such individual such a supplementary payment, if the amount of the supplementary payments payable pursuant to such agreement were established without regard to paragraph (3)(A)(ii) of such section 212(a), and

(2) in like manner, and subject to the same terms and conditions, as medical assistance is provided under such plan to individuals with respect to whom benefits are payable for such month under the supplementary security income program established by title XVI of the Social Security Act.

Federal matching under title XIX of the Social Security Act shall be available for the medical assistance furnished to individuals who are eligible for such assistance under this subsection.

medical assistance provided to State Supplemental Assistance recipients be provided "in like manner, and subject to the same terms and conditions," as medical assistance provided to those receiving benefits under the federal Supplemental Security Income program established by Title XVI of the Social Security Act. A fair reading of the statute in light of its legislative history and subsequent HEW regulations requires us to conclude that, consistent with its protective intent in Pub.L. No. 93–66, § 212, Congress by passing Pub.L. No. 93–233, § 13(c) sought to further protect the group of aged, blind, or disabled persons whose special needs had entitled them to mandatory State Supplemental Assistance payments. Pub.L. No. 93–233, § 13(c) must be viewed as nothing less than a congressional mandate requiring the states to provide Medicaid coverage, not merely Medicaid eligibility, to all persons who are recipients of a mandatory payment pursuant to Pub.L. No. 93–66, § 212 without the condition of a spend down payment.[7] The actions of defendants in requiring plaintiffs to spend down income in order to receive medical assistance, as prescribed in State Department of Public Welfare Bulletin No. 285C, is prohibited by this statute and constitutes conduct in violation of the Supremacy Clause of the U.S. Constitu-

tion. The legislative history of Pub.L. No. 93–233, § 13(c) dictates this conclusion.[8]

IV

As already stated, the enactment of Pub.L. No. 93–66 mandating a State Supplemental Assistance payment to any aged, blind, or disabled person who was receiving in December 1973 more than the federal Supplemental Security Income allowance, did not specifically require the states to continue Medicaid benefits to that class of recipients. In promulgating section 13(c) of this statute Congress recognized that state discretion regarding Medicaid coverage of such recipients created the risk of loss of such coverage for some of these people. To avoid this possibility and prevent any disadvantage resulting from the Supplemental Security Income program, Congress required that the states continue Medicaid coverage for persons who receive mandatory State Supplemental Assistance benefits until such time as the person becomes ineligible for the mandatory supplement. Given that Congress enacted Pub.L. No. 93–233, § 13(c) to ensure the status quo of State Supplemental Assistance recipients under the new federal program, it is impossible to construe Indiana's conduct in requiring a spend down payment as a prerequisite to

---

7. The district court conceded that Pub.L. No. 93–233, § 13(c) requires a state to grant a State Supplemental Assistance recipient eligibility for Medicaid without the condition of payment of a spend down. The court, however, upheld the conduct of the state in the present case by distinguishing between eligibility and coverage under the Medicaid program. The judge stated, "Thus, even though a recipient did not choose to pay in the spend down amount he would always be eligible for Medicaid, although for that month he would not receive coverage." We find this distinction employed by the trial court wholly without merit and in contravention of the statutory scheme created by Congress to protect the plaintiffs' class. (See part IV of this opinion.) Whether the spend down payment is reviewed as a condition to Medicaid eligibility or a prerequisite to Medicaid coverage, the result is the same—precluding plaintiffs' class from Medicaid benefits.

8. See Rep. of Sen.Fin.Committee, S.Rep. 93–533, 93d Cong. 1st Sess. at p. 56. Section 13(c) of Pub.L. No. 93–233 was originally contained in H.R. 3153 § 171(c), 93d Cong. 1st Sess., which bill, consisting of comprehensive amendments to the Social Security Act, is still pending in the Congress. The language of § 171(c), however, was removed from H.R. 3153 and inserted in another bill, H.R. 11333. This latter bill, as amended and enacted on December 30, 1973, is Pub.L. No. 93–233. The language of § 171(c) of H.R. 3153 is identical to that of § 13(c) of Pub.L. No. 93–233 except for the deletion of the unnecessary word "a" from the line in part (1) of the bill which now reads "such supplementary payment." Since the extracted language of § 171(c) of H.R. 3153 is otherwise identical to that enacted in § 13(c), S.Rep. 93–533 is proper legislative history for Pub.L. No. 93–233, § 13(c). See H.R. 3153, 93d Cong. 1st Sess., reported in CCH Unemp.Ins.Rptr., Extra Edition 635, Dec. 5, 1973 at 157–58.

Medicaid coverage as consistent with the purpose of this statute.[9]

Further support for this position can be found in the regulations issued by the United States Department of Health, Education and Welfare governing the states' implementation of Title XIX of the Social Security Act. The regulations address the issue of coverage and conditions of eligibility for medical assistance and distinguish between those who are categorically needy and those who are medically needy. The latter may be subject to the payment of a spend down because their income and resources which are insufficient to meet the costs of necessary medical and remedial care and services exceed the amount of income and resources allowed to the categorically needy. 45 C.F.R. § 248.1(a)(2), 39 Fed.Reg. 9514 (1974). For the categorically needy, Medicaid coverage is mandatory. 45 C.F.R. § 248.1 requires that a state plan under Title XIX of the Social Security Act, which must comply with the minimum coverage required by law, specify what groups are covered as categorically needy for Medicaid. While the states are free to select one of three alternatives upon which to base Medicaid coverage for the aged, blind, or disabled, all state plans must include as categorically needy every individual who receives a State Supplemental Assistance payment mandated pursuant to Pub.L. No. 93–66, § 212. See 45 C.F.R. § 248.-1(b)(2)(iv).

It is in this way that Pub.L. No. 93–233, § 13(c) should be viewed as a grandfather clause, securing for plaintiffs (so long as they are eligible for State Supplemental Assistance payments pursuant to Pub.L. No. 93–66) Medicaid eligibility and coverage. As beneficiaries of the protective legislation mandating payment of State Supplemental Assistance, plaintiffs are members of the class of categorically needy who are deemed fi-nancially eligible to receive Medicaid coverage and benefits, irrespective of income or other state requirements. This is the import and meaning of Pub.L. No. 93–233, § 13(c) which has been violated by enforcement of Bulletin 285C of the Indiana State Department of Public Welfare.

Defendants urge that a literal reading of § 13(c)(2) of Pub.L. No. 93–233 requires a contrary conclusion. Admittedly, the language of this section requiring Medicaid coverage to State Supplemental Assistance recipients in like manner and subject to the same terms and conditions as coverage for other Supplemental Security Income recipients creates ambiguity as to congressional intent. To conclude, as defendants do, however, that this section contemplates the conduct at issue, namely the conditioning of Medicaid coverage for State Supplemental Assistance recipients on the payment of a spend down, is to ignore the legislative history and regulations of Pub.L. No. 93–233, § 13(c) and to render this statutory provision a nullity. The language of Pub.L. No. 93–233, § 13(c)(2) concerns the nature of Medicaid coverage to mandatory State Supplemental Assistance recipients rather than conditions of eligibility. Subsection (c)(2) is consistent with the express intent of Congress to secure for plaintiffs automatic Medicaid eligibility and coverage in that the subsection imposes an obligation on the states to provide plaintiffs with the same quantity and quality of medical services, subject to the same administrative procedures, as are made available to Supplemental Security Income recipients.

The state's conduct in conditioning plaintiffs' Medicaid benefits on the payment of a spend down defies not only the legislative history and HEW regulations regarding Pub.L. No. 93–233, § 13(c), but also the statutory scheme developed by Congress to protect those

---

9. S.Rep. 93–533, 93rd Cong. 1st Sess., at 56, states in part that:

The Committee bill therefore requires states to continue Medicaid coverage for persons who receive mandatory state supplementary benefits until such time as the person becomes ineligible for the mandatory supplement. Since these are persons who are already covered under the current Medicaid program, this would not represent an increase in costs to the states.

aged, blind, or disabled persons whose pre-January 1, 1974 income and medical assistance would be diminished as a result of the new federalized Supplemental Security Income program. Congress mandated special treatment for these persons and that command cannot be ignored by the state. Plaintiffs, as recipients of a mandatory State Supplemental Assistance payment, are entitled to Medicaid coverage and are automatically eligible for it. Medicaid must be provided them without a spend down. Insofar as the State of Indiana Department of Public Welfare Bulletin 285C is in conflict, such bulletin is invalid.

The judgment of the district court is reversed and the cause is remanded with direction to enter judgment in accordance with this opinion.