**Richard WEBB et al., Plaintiffs,**

v.

**Kwegyir AGGREY et al., Defendants.**

**No. C 76–324.**

United States District Court,
N. D. Ohio, W. D.

Feb. 23, 1977.

Sarah L. Baker, Advocates for Basic Legal Equality, Toledo, Ohio, for plaintiffs.

Anthony G. Pizza, Lucas County Prosecutor, Toledo, Ohio, Geoffrey E. Webster, Asst. Atty. Gen., Columbus, Ohio, for defendants.

FINDINGS OF FACT and
CONCLUSIONS OF LAW

WALINSKI, District Judge:

I.  FINDINGS OF FACT

1) This is a suit for declaratory and injunctive relief under 42 U.S.C. § 1983, with jurisdiction over the subject matter and the parties hereto pursuant to 28 U.S.C. § 1343(3).  Jurisdiction is also predicated on 28 U.S.C. § 1331.  The suit was brought as

a class action. Both single-judge and three-judge issues were raised. Plaintiff moved the Court for preliminary relief on an individual basis. Pursuant to Rule 65, Fed.R. Civ.P., the hearing on the preliminary injunction held on August 3, 1976, was consolidated with the trial on the merits on the single-judge issues, as to the named plaintiff, by stipulation of the parties.

2) Plaintiff Richard Webb is a disabled adult citizen of the United States and a resident of the State of Ohio.

3) The complaint generally alleges that plaintiff and all other individuals who have been terminated from or denied eligibility for benefits under Ohio's medical assistance program (Medicaid), solely on the ground that their monthly gross income exceeds a fixed ceiling of $438, have been denied rights secured by (1) the Social Security Act, 42 U.S.C. § 301 *et seq.*, which created the Medicaid program, (2) the Ohio Revised Code § 5101.51, which authorizes Ohio's participation in the Medicaid program, and (3) the Fourteenth Amendment of the United States Constitution, which guarantees all persons due process and equal protection of the law.

4) Defendant Kwegyir Aggrey is Acting Director of the Department of Public Welfare for the State of Ohio and is responsible for administration and policy decisions for all State government programs of public assistance, including the Medicaid program.

5) Defendant George Steger is the Director of the Lucas County Welfare Department and is responsible for the administration of the Medicaid program within the County.

6) Plaintiff Richard Webb resides at Hillhaven Convalescent Center, 2051 Collingwood, Toledo, Ohio, 43620. He has resided there, except for an occasional hospital admission, since July 17, 1971.

7) Plaintiff Richard Webb suffers from Syringomyelia, a disease of the central nervous system which leaves him totally dependent on others for his daily and personal care. He is on a Stryker Frame, a device which prevents bed sores. Because of his physical incapacity, Mr. Webb is in need of extensive skilled nursing care.

8) Plaintiff Webb has been a recipient of medical benefits under Ohio's Medicaid program for several years. Under this program, Webb paid all of his monthly income except $25 (which he was permitted to retain for personal needs) toward the cost of his medical 'care. Medicaid then paid the difference between what Webb paid and the cost of medical services up to a maximum level of payment established by the State.

9) Plaintiff Webb presently receives a $255.80 monthly disability pension from the Social Security Administration, and a monthly pension of $208.52 from the Veterans Administration. His total income is, therefore, $464.32. This income places him $26.32 over the defendants' gross income ceiling of $438.

10) In December, 1975, after Webb received an increase in his Veterans benefits, which boosted his total monthly income to $464.32, he received notice of the proposed termination of his Medicaid benefits because his income exceeded $438.

11) Webb promptly requested a State hearing, which was held on March 23, 1976. As a result of that hearing, Webb received a decision from the hearing officer, dated March 26, 1976, which upheld the proposed termination on the ground that his income exceeded $438, in violation of Ohio Public Assistance Manual [OPAM] § 374. On March 31, 1976, Webb was terminated from the Medicaid program. On April 8, 1976, within the prescribed 30-day period, Webb requested a reconsideration of the State hearing officer's decision. In a reconsideration letter dated May 27, 1976, the defendant Ohio Department of Public Welfare denied Webb's request for reinstatement and affirmed the State hearing decision.

12) Plaintiff Webb was permitted to remain at the convalescent home after his termination from Medicaid for the months of April, May and June, 1976, in order to be able to fight the termination. However, Webb received notice from the convalescent home that because of his inability to pay in

full the cost of his care, he would no longer be permitted to stay at Hillhaven after June 20, 1976, unless he was reinstated on the Medicaid program.

13) The cost of Webb's care at the convalescent home for the month of April, 1976, was $927.14, of which he paid $464.32, leaving an unpaid balance of $462.82, the cost of Webb's care for May, 1976, was $775.26, of which he paid $439.32, leaving unpaid $335.94, for a total unpaid balance of $798.76. The cost of Webb's care for June was $735, plus additional miscellaneous expenses. Webb's income covers just over one-half of his monthly expenses for skilled nursing care.

14) Mr. Webb has no place to go in the event he is discharged from the convalescent home. Other skilled nursing facilities in the area will not accept him, nor will the Veterans home in Dayton accept him.

15) Without skilled nursing care, Webb will develop skin sores, which can lead to infections and a rapid decline in health. Webb will soon die if he does not get skilled nursing care. With skilled nursing care Webb could live for many years. Webb is 53 years old.

## II. DISCUSSION

When Congress enacted Pub.L. No. 92–603, 42 U.S.C. § 1396a, it was concerned, among other things, with providing certain aged, blind or disabled individuals, within the meaning of Subchapter XVI of the Social Security Act, with medical assistance under the Medicaid program. Those states which choose to participate in this program are given three alternative standards upon which to determine Medicaid eligibility for the aged, blind or disabled. An examination of Ohio Revised Code § 5101.51, establishes that Ohio adopted the standards set forth in 42 U.S.C. § 1396a(f). *See* Proposed Findings of Fact and Law, Findings of Fact ¶ 6, filed by the State of Ohio on November 22, 1976. That standard allows Ohio to restrict Medicaid eligibility to those aged, blind or disabled individuals (within the meaning of Subchapter XVI of the Social Security Act), who are eligible under Ohio's

January 1, 1972 standards. 45 C.F.R. 248.-1(b)(2)(iii).

Ohio's eligibility standards are set forth in § 374 of the OPAM. The plaintiff argues that the monthly gross income ceiling of $438 provided in that section is in conflict with the federal statutes and regulations. He asserts that 42 U.S.C. § 1396a(f) and the regulations promulgated pursuant thereto require the State to allow for the deduction of incurred medical expenses (spend down) before the imposition of any eligibility requirements. An examination of the statute, the legislative history, the regulations, administrative interpretations and *Hayes v. Stanton,* 512 F.2d 133 (7th Cir. 1975), leads the Court to agree.

42 U.S.C. § 1396a(f), as noted above, allows Ohio to restrict Medicaid eligibility to those Supplemental Security Income recipients who are financially and categorically eligible under the State's January 1, 1972 standards. In determining eligibility under the January 1, 1972 standards, however, the statute requires the State to allow a potential recipient to deduct from his income "incurred expenses for medical care as recognized under State law."

The history and application of this provision was explained by the Seventh Circuit Court of Appeals as follows:

This criterion for Medicaid eligibility was intended to allow states that had monetary eligibility levels below the Supplemental Security Income monetary standard to retain the lower pre-existing standard in order to limit Medicaid eligibility. H.Rep. 92–231, 92d Cong. 1st Sess., at 197, 300–01. 1972 U.S.Code Cong. & Admin.News at pp. 5182–83, 5286–87; S.Rep. 92–1230, 92d Cong. 1st Sess., at 222. Congress did not intend, however, to permit Supplemental Security Income recipients who did not meet their respective state's January 1, 1972 financial standard to be precluded from participation in the Medicaid program. Congress, therefore, conditioned a state's use of its January 1, 1972 financial standard on the inclusion of a spend down

provision in the state Medicaid plan. See Pub.L. No. 92–603, § 209(f), 42 U.S.C. § 1396a(f). Under this provision a state using its January 1, 1972 Medicaid eligibility standard after January 1, 1974 is required to allow those recipients who have income above the eligibility level but who have high medical expenses to become eligible for Medicaid. Thus, the spend down provision is a device by which Congress has expanded Medicaid coverage to include recipients with high medical expenses who because of their income would not otherwise be eligible for medical assistance.

*Hayes v. Stanton,* 512 F.2d 133 (1975).

The Court finds support for its interpretation of 42 U.S.C. § 1396a(f), as requiring Ohio to determine income eligibility by first deducting incurred medical expenses in the position of the Commissioner of Region V of the Department of Health, Education and Welfare. In a letter to Kwegyir Aggrey, dated July 26, 1976, the Commissioner stated that the "State of Ohio's current practice concerning the Medicaid spenddown is out of compliance with Federal regulations." This conclusion was based on the Commissioner's well-founded interpretation of the statute, the regulations and the Congressional intent behind the enactment of the section.

Finally, it is clear that Ohio's gross income ceiling is not in compliance with the regulations promulgated pursuant to 42 U.S.C. § 1396a(f). *See* 45 C.F.R. 248.-1(a)(ii)(B), and 248.1(b)(2)(iii).

## III. CONCLUSIONS OF LAW

1) This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. *Ostrow Pharmacies, Inc. v. Beal,* 394 F.Supp. 22 (E.D.Pa.1975), *aff'd,* 527 F.2d 645 (3rd Cir. 1976); *Yanez v. Jones,* 361 F.Supp. 701 (D.Utah 1973); *Harmony Nursing Home, Inc. v. Anderson,* 341 F.Supp. 957 (D.Minn. 1972). And, as the constitutional claims raised by the plaintiff are substantial, the Court also has jurisdiction under 28 U.S.C. § 1343(3), with a cause of action stated pursuant to 42 U.S.C. § 1983. *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39

L.Ed.2d 577 (1974); *Lewis v. Shulimson,* 400 F.Supp. 807 (E.D.Mo.1975), *aff'd,* 534 F.2d 794 (8th Cir. 1976); *Bass v. Richardson,* 338 F.Supp. 478 (S.D.N.Y.1971).

■ 2) Because the plaintiff's statutory claim is dispositive, this Court is not required to convene a three-judge court to hear the remaining constitutional claims. *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Swift & Co. v. Wickham,* 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965).

■ 3) Section 374 of the OPAM, to the extent that it sets a gross income ceiling in determining the financial eligibility of a categorically eligible individual without allowing the categorically eligible individual a deduction for his incurred medical expenses, is in conflict with 42 U.S.C. § 1396a(f). Section 1396a(f) requires a state to allow an individual who is categorically eligible for Medicaid benefits to deduct incurred medical expenses from his income before determining his income eligibility. *See Hayes v. Stanton,* 512 F.2d 133 (7th Cir. 1975).

■ 4) Plaintiff has failed to establish that the class he seeks to represent is so numerous that joinder of all members is impracticable, and the Court must accordingly deny his motion to certify this cause as a class action. Fed.R.Civ.P. 23(a)(1). The Court notes, however, that the declaratory judgment aspect of this Order will require the defendants to modify their treatment of all those who are similarly situated in a manner not inconsistent with said declaratory judgment.

5) Plaintiff Webb's medical expenses reduce his income below the State standard for institutionalized persons, and he may not, therefore, be held ineligible on the ground that his gross income exceeds the ceiling set forth in § 374 of the OPAM.

For the foregoing reasons, it is accordingly

DECLARED that § 374 of the OPAM, to the extent that said provision utilizes a gross monthly income ceiling for the determination of the financial eligibility of categorically eligible Medicaid recipients and

applicants without first allowing those recipients and applicants to deduct from their gross income incurred expenses for medical care, Supplemental Security Income payments and State supplementary payments (if any), is in conflict with 42 U.S.C. § 1396a(f), and the regulations promulgated pursuant thereto; and it is therefore

ORDERED and ADJUDGED that defendants Kwegyir Aggrey and George Steger are permanently ENJOINED from failing to provide Medicaid benefits to plaintiff Richard Webb for as long as he is categorically eligible and for as long as his *net* income, to be computed by deducting incurred expenses for medical care, Supplemental Security Income payments and State supplementary payments (if any) from his gross income, does not exceed the State standard for institutionalized persons.

IT IS FURTHER ORDERED that the plaintiff's motion to certify this cause as a class action should be, and hereby is, denied.

IT IS FURTHER ORDERED that plaintiff be granted costs in this proceeding.