Jennie THOM et al., Plaintiffs,

v.

Kwegyir AGGREY et al., Defendants.

No. C 77–271.

United States District Court,
N. D. Ohio, W. D.

Findings of Fact June 29, 1977.

On Motion for Attorneys' Fees
Sept. 22, 1977.

On Motion for Stay Oct. 20, 1977.

Advocates for Basic Legal Equality by Sarah L. Baker and John Holme, Toledo, Ohio, for plaintiffs.

Anthony G. Pizza, Pros. Atty., Toledo, Ohio by William J. Anderson, Asst. Atty. Gen., Columbus, Ohio, for defendants.

## FINDINGS OF FACT and CONCLUSIONS OF LAW

WALINSKI, District Judge.

### FINDINGS OF FACT

1) This suit is brought as a class action for declaratory and injunctive relief under 42 U.S.C. § 1983, with jurisdiction over the subject matter of this suit and the parties hereto pursuant to 28 U.S.C. §§ 1343(3) and (4). Plaintiffs moved for a temporary restraining order and preliminary relief as to the class. Pursuant to Rule 65, Federal Rules of Civil Procedure, the hearing on the preliminary injunction was consolidated with the trial on the merits on motion of the defendants, without objection by the plaintiffs.

2) The complaint generally alleges that plaintiffs and all other individuals who have been terminated from or denied eligibility for benefits under Ohio's Medical Assistance Program (Medicaid) solely on the grounds that their monthly gross income exceeds a fixed ceiling of $438, have been denied rights secured by (1) the Social Security Act, 42 U.S.C. § 301 *et seq.,* which created the Medicaid Program, (2) the Ohio Revised Code § 5101.51, which authorizes Ohio's participation in the Medicaid Program, and (3) the Fourteenth Amendment of the United States Constitution, which guarantees all persons due process and equal protection of the law.

3) Plaintiffs Jennie Thom, Marie Waldrip, Iva Sapp, Fannie Siegal, Albert Scolaro, Ella Blair, Charles Long, and Guy Kemmerline are elderly adult citizens of the United States and residents of the State of Ohio. Plaintiff Gail Day is a twenty-six year old disabled adult citizen of the United States and a resident of the State of Ohio.

4) Defendant Kwegyir Aggrey is Director of the Ohio Department of Public Welfare and is responsible for administration and policy decisions for all state government programs of public assistance, including the Medicaid Program.

5) Defendant George Steger is Director of the Lucas County Welfare Department and is responsible for the Medicaid Program within the County.

6) Plaintiff Jennie Thom resides at Villa North Nursing Home, 4546 Lewis Avenue, Toledo, Ohio.

7) Plaintiff Jennie Thom suffers from the following medical problems: Hypertension, severe; Congestive heart failure, Coronary insufficiency; Arteriosclerotic heart disease; Iron deficiency anemia. She is confined to bed except for meals. Because of her medical problems, she requires intermediate nursing care. Her plan of care and treatment, as prescribed by her doctor on January 29, 1976, and as reviewed medically on October 28, 1976, and April 28, 1977, calls for her to receive treatment at an intermediate care facility within the meaning of 42 U.S.C. § 1396d(i) and 42 U.S.C. § 1395x(j). She is presently receiving intermediate care within the meaning of 42 U.S.C. § 1396d(c).

8) In December, 1976, Plaintiff Thom was receiving Medicaid benefits. During that month, her daughter, Yolanda Beckett, received a notification from the Lucas County Welfare Department stating that because Plaintiff Thom's income exceeded $438 per month, she would be terminated from Medicaid.

9) A state hearing about the proposed termination was held on February 9, 1977. In a decision dated February 18, 1977, the hearing officer upheld the Welfare Department's plan to terminate her from Medicaid. She was taken off Medicaid on March 31, 1977.

10) At the time of her hearing decision, Plaintiff Thom's total monthly income was $503.54 ($181.40 from Social Security; $322.24 from Workmen's Compensation). At this time her total monthly income is $531 ($191.40 from Social Security; $339.50 from Workmen's Compensation). All her income is credited to her account at Villa North.

11) The cost of Plaintiff Thom's care at Villa North as a private pay patient is $360 per month, which includes a basic daily rate of $19.80 per day. In addition, her medications, formerly covered by Medicaid, cost $40 or more per month. She presently owes Villa North $388.80 for care received in the months of April and May after she was taken off Medicaid. Her income is insufficient to pay the cost of her nursing care and medication.

12) Plaintiff Thom's children are unable to care for her in their homes, and she has no alternative to nursing home care.

13) If Plaintiff Thom's Medicaid benefits are terminated, she will be unable to obtain the intermediate nursing care that she requires. Without such care it is probable that Plaintiff Thom will suffer a serious decline in health.

14) Plaintiff Marie Waldrip is 79 years old. She resides at Lourdes Nursing Home, 4830 Salem Avenue, Dayton, Ohio.

15) Plaintiff Waldrip suffers from general arteriosclerosis, arthritis, parkinson's disease, and hypertension. She requires assistance in eating her meals and has some difficulty in swallowing. She must be turned and repositioned every two hours while in bed in order to prevent infection. Her verbal response is minimal. She requires nursing care 24 hours per day.

16) A state hearing on the Montgomery County Welfare Department's proposal to terminate Plaintiff Waldrip's Medicaid benefits was held on March 22, 1977. At the time of the hearing, Plaintiff Waldrip's monthly income was $443.80 ($257.80 from Social Security; $186 from Veteran's Administration). The cost of her nursing care is $22.67 per diem, exclusive of the cost of her medication. Her family is unable to absorb the cost of her care.

17) In a decision dated April 12, 1977, the hearing officer upheld the Montgomery Welfare Department's plan to terminate Plaintiff Waldrip's Medicaid benefits.

18) Plaintiff Waldrip requires and is presently receiving skilled nursing facility services within the meaning of 42 U.S.C. § 1396d(f) in a skilled nursing facility within the meaning of 42 U.S.C. § 1396d(i) and 42 U.S.C. § 1395x(j).

19) Plaintiff Waldrip has no place to go if she is discharged from Lourdes. The nursing care she requires is unavailable in the community at a price she can afford to pay.

20) Plaintiff Waldrip could not receive the nursing care she needs in the home, and it would not be medically advisable for her to attempt to do so.

21) Without skilled nursing care, Plaintiff Waldrip will develop infections and a rapid decline in health.

22) Plaintiff Iva Sapp resides at Valley View Nursing Home, 721 Hickory Street, Akron, Ohio, and has resided there since June, 1975.

23) Plaintiff Sapp requires skilled nursing care within the meaning of 42 U.S.C. § 1396d(f) in a skilled nursing facility within the meaning of 42 U.S.C. § 1396d(i) and 42 U.S.C. § 1395x(j).

24) Plaintiff Sapp began receiving Medicaid benefits in August, 1975. She was notified on April 10, 1977, by the Summit County Welfare Department that she would be terminated from Medicaid because a Veteran's pension increase placed her income in excess of $438.

25) A state hearing has been requested for Plaintiff Sapp but not yet held. Her benefits continued pending the hearing decision.

26) Plaintiff Sapp's total monthly income is $459.40 (Social Security and Veteran's Pension), which is less than the cost of her nursing care at Valley View.

27) If Plaintiff Sapp is terminated from Medicaid, there are no other nursing homes in the Akron area that would accept her at the price she can afford to pay. She has no alternatives to nursing care.

28) Without skilled nursing care it is probable that Plaintiff Sapp will suffer a serious decline in health.

29) Plaintiff Ella Blair resides at Valley View Nursing Home, 721 Hickory Street, Akron, Ohio, and has resided there since May 22, 1975.

30) Plaintiff Blair suffers from senility and chronic urinary tract infection.

31) Plaintiff Blair has been receiving Medicaid benefits. She received a notice dated March 30, 1977, from the Summit County Welfare Department that she would be terminated from Medicaid because her income, due to an increase in her Veteran's pension, exceeded $438.

32) A County conference on Plaintiff Blair's proposed termination from Medicaid was held on April 25, 1977, at the Summit County Welfare Department. The conference decisions stated that she is not eligible for Medicaid assistance as her income exceeds $438 per month. A state hearing has been requested but not yet held. Her benefits continue pending a hearing.

33) Plaintiff Blair's monthly income is $440.90 ($241.40 from Social Security; $199 from Veteran's Administration), which is less than the cost of her nursing care at Valley View.

34) If Plaintiff Blair is terminated from Medicaid, she will have nowhere to go and no one to care for her after she is discharged from the home.

35) If Plaintiff Blair is terminated from Medicaid, it is probable that she will suffer a serious decline in health.

36) Plaintiff Charles Long resides at Valley View Nursing Home, 721 Hickory Street, Akron, Ohio, and has resided there since February, 1975, except for one period of hospitalization.

37) Plaintiff Long receives skilled nursing care within the meaning of 42 U.S.C. § 1396d(f) in a skilled nursing facility within the meaning of 42 U.S.C. § 1396d(i) and 42 U.S.C. § 1395x(j).

38) Plaintiff Long began receiving Medicaid benefits in March, 1975. He received notice in March, 1977, that he would be terminated from Medicaid because of an

increase in his Veteran's pension, which caused his income to exceed $438. He received a state hearing on May 10, 1977. In a decision dated May 27, 1977, the hearing officer upheld the Welfare Department's plan to terminate his benefits.

39) At the time of his hearing, Plaintiff Long's monthly income was $482.05 (Social Security and Veterans' Administration), which is less than the cost of his nursing care at Valley View.

40) There are no other nursing homes in the Akron area that will accept Plaintiff Long at the price he can afford to pay, and Plaintiff Long has no alternative to skilled nursing care.

41) If Plaintiff Long's Medicaid benefits are terminated, he will be unable to obtain the skilled nursing care that he requires. Without such care it is probable that he will suffer a serious decline in health.

42) Plaintiff Guy Kemmerline resides at Valley View Nursing Home, 721 Hickory Street, Akron, Ohio, and has resided there since May 23, 1975.

43) Plaintiff Kemmerline receives intermediate nursing care in an intermediate care facility as defined in 42 U.S.C. § 1396d(c). He suffers from arteriosclerosis with essential hypertension, arthritis, gout, and a double hernia.

44) Plaintiff Kemmerline has received Medicaid benefits while a resident at Valley View. He received a notice dated March 24, 1977, that he would be terminated from Medicaid because his income exceeded $438. He received a state hearing on May 10, 1977. In a hearing decision dated May 27, 1977, the hearing officer upheld the plan to terminate his Medicaid.

45) Plaintiff Kemmerline's monthly income is $523.80 ($248.80 from Social Security; $275 from a trust fund), which is less than the cost of his nursing care at Valley View.

46) Plaintiff Kemmerline has no alternative to intermediate nursing care, and Valley View will be unable to keep him unless his Medicaid benefits are reinstated.

47) If Plaintiff Kemmerline's Medicaid benefits are terminated, he will be unable to obtain the intermediate nursing home care that he requires. Without such care it is probable that he will suffer a serious decline in health.

48) Plaintiff Fannie Siegal resides at Pine Valley Manor Nursing Home, 4360 Brecksville Road, Richfield, Ohio, and has resided there since October, 1970.

49) Plaintiff Siegal suffers from arthritis, bowel obstruction, and chronic eye irritation. She receives intermediate level nursing care in an intermediate care facility as defined in 42 U.S.C. § 1396d(c).

50) Plaintiff Siegal began receiving Medicaid benefits in October, 1974. She received a notice dated March 29, 1977, that the Summit County Welfare Department planned to terminate her benefits because a Veteran's pension increase placed her income in excess of $438.

51) At a County conference on the proposed termination of Plaintiff Siegal's Medicaid benefits with the Summit County Welfare Department, it was held that the proposed termination was proper. A state hearing has been requested but not yet held. She continues to receive benefits pending a hearing.

52) Plaintiff Siegal's monthly income is $447.50 ($94.50 from Social Security; $353 from Veteran's Administration), which is less than the cost of her nursing care at Pine Valley.

53) Plaintiff Siegal has no children and no friends or other relatives able to care for her.

54) If Plaintiff Siegal is terminated from Medicaid, Pine Valley will not be able to continue to care for her, and she has no alternative to continued nursing care.

55) If Plaintiff Siegal's Medicaid benefits are terminated, she will be unable to obtain the intermediate nursing care that she requires. Without such care, it is probable that she will suffer a serious decline in health.

56) Plaintiff Albert Scolaro resides at Pine Valley Manor Nursing Home, 4360

Brecksville Road, Richfield, Ohio, and has resided there since October 16, 1973.

57) Plaintiff Scolaro suffers from chronic brain syndrome and chronic urinary tract infection.

58) Plaintiff Scolaro has been receiving Medicaid benefits. He received notice that the Summit County Welfare Department proposed to terminate his Medicaid benefits because his income exceeds $438.

59) A state hearing was held on May 3, 1977. In a decision dated May 27, 1977, the hearing officer upheld the Welfare Department's plan to terminate benefits.

60) Plaintiff Scolaro's monthly income is $492.05 ($246.60 from Social Security; $245.45 from Veteran's Administration), which is less than the cost of his care at Pine Valley.

61) Plaintiff Scolaro will be discharged from the nursing home because of his inability to pay the total costs. He is unable to care for himself, and has no alternative to nursing home care. He is not eligible for admission to a Veteran's Administration Hospital.

62) Plaintiff Gail Day is 26 years old. He resides at Edwin Shaw Hospital, 2600 Sanitorium Road, Akron, Ohio. He has been a patient there since his admission in December, 1975.

63) Plaintiff Day has been in a coma since an accident in June, 1974. Prior to his admission to the hospital, his family tried to care for him at home. This task was beyond the family's capabilities; he was placed in the Valley View Nursing Home until he was eventually moved to the hospital. He requires total care.

64) Plaintiff Day has been receiving Medicaid benefits while in the hospital. Notice was given to his father, on or about May 15, 1977, that the Summit County Welfare Department planned to terminate him from Medicaid because his income exceeded $438. A state hearing has been requested but not yet held. His benefits continue pending a hearing.

65) At this time, Plaintiff Day's income is $500.12 per month (Social Security and Veteran's Administration).

66) The cost of his care is $70 per day, or $2100 per month. Plaintiff Day's father supports a family and is unable to contribute to the cost of his care.

67) Plaintiff Day has no alternative to hospital care; it is doubtful that Edwin Shaw Hospital would be able to continue to care for him if his Medicaid benefits are terminated.

68) Veteran's Administration Hospital care is not available to Plaintiff Day. Formerly, Plaintiff Day was a patient in a Veteran's Administration Hospital, but the hospital discharged him, and his family has not been able to have him readmitted to a Veteran's Administration Hospital. He does not have a service-connected disability.

69) It would not be medically advisable for a patient who needs skilled nursing care to go home and attempt to receive such care in the home.

70) It would not be medically advisable for a patient who needs intermediate care to go home and attempt to receive such care in the home.

71) On June 16, 1977, this Court certified this case as a class action, pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure, the class consisting of all the Medicaid recipients otherwise categorically eligible but who have been or are about to be terminated, whose income exceeds the State's arbitrary $438 limit.

72) The class is so numerous that joinder of all members is impracticable. There is evidence in the record of at least 47 similarly situated persons in the State of Ohio, including the nine named plaintiffs.

73) The questions of law and fact, concerning the legality of denying all Medicaid services to persons whose monthly gross income exceeds $438, are common to the class.

74) The claims of the named plaintiffs are typical of those of the members of the class.

75) The representative plaintiffs are willing and able to vigorously prosecute this

action. Their attorneys are qualified, experienced and generally able to conduct the litigation. Plaintiffs and the class are represented by institutional counsel having an abundance of experience in class action litigation before this Court.

76) The representative parties' interests in continuing to receive Medicaid benefits are co-extensive with, and not antagonistic to, the interests of the members of the class.

77) The representative plaintiffs will fairly and adequately protect the interests of the class.

## CONCLUSIONS OF LAW

1) This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. *Ostrow Pharmacies, Inc. v. Beal*, 394 F.Supp. 22 (E.D.Pa.1975), aff'd, 527 F.2d 645 (3rd Cir. 1976); *Yanez v. Jones*, 361 F.Supp. 701 (D.Utah 1973); *Harmony Nursing Home, Inc. v. Anderson*, 341 F.Supp. 957 (D.Minn. 1972). And, as the constitutional claims raised by plaintiffs are substantial, the Court also has jurisdiction under 28 U.S.C. § 1343(3), with a cause of action stated pursuant to 42 U.S.C. § 1983. *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Lewis v. Shulimson*, 400 F.Supp. 807 (E.D.Mo.1975), aff'd, 534 F.2d 794 (8th Cir. 1976); *Bass v. Richardson*, 338 F.Supp. 478 (S.D.N.Y.1971).

■ 2) Pursuant to Rule 23(c) of the Federal Rules of Civil Procedure, this Court certifies a class consisting of all those aged, blind, and disabled persons in the State of Ohio whose monthly gross income exceeds $438, who have been denied or terminated from Medicaid or been given notice or an intention to terminate, solely because their monthly gross income exceeds $438, and whose medical expenses, when deducted from gross income, would reduce their income to Ohio's eligibility standard ($146 if in an independent living arrangement; $25 if in an institutional arrangement).

■ 3) Plaintiffs have presented sufficient evidence of irreparable harm to justify injunctive relief. If medical care is de-

nied to plaintiffs and members of the class, they risk a serious decline in health, or even death.

4) In weighing the potential harm to defendants if plaintiffs' request for injunctive relief is granted, there is little question that the threat of irreparable injury to plaintiffs and members of the class greatly outweigh any harm to the defendants. The defendants are clearly better able to bear any burden which injunctive relief may create, especially since the legislature has the option of electing another option for Medicaid under federal statutes and regulations if this one is too costly.

5) Any administrative expense and inconvenience incurred by the defendants to date in preparing to change the Medicaid Program to conform to § 1634 of the Social Security Act are self-imposed. Defendants are more able to bear the cost of complying with this Court's injunction by sending out the notifications and paying the benefits provided for herein than are plaintiffs and members of the class able to bear the burden of being denied medical care.

■ 6) Section 374 of the Ohio Public Assistance Manual, to the extent that it sets a gross income ceiling in determining the financial eligibility of a categorically eligible individual without allowing the categorically eligible individual a deduction for his incurred medical expenses, is in conflict with 42 U.S.C. § 1396a(f). Section 1396a(f) requires a state to allow an individual who is categorically eligible for Medicaid benefits to deduct incurred medical expenses from his income before determining his income eligibility. *Hayes v. Stanton*, 512 F.2d 133 (7th Cir. 1975); *Webb v. Aggrey*, 447 F.Supp. 17 (N.D.Ohio 1977).

■ 7) The medical expenses of plaintiffs and members of the class reduce their income below the state standard, and they may not, therefore, be held ineligible on the ground that their gross income exceeds the ceiling set forth in § 374 of the OPAM.

■ 8) Those states which chose to participate in the Medicaid Program were giv-

8

en three alternative standards upon which to determine Medicaid eligibility for the aged, blind or disabled. An examination of Ohio Revised Code § 5101.51, establishes that Ohio adopted the standards set forth in 42 U.S.C. § 1396a(f). That standard allows Ohio to restrict Medicaid eligibility to those aged, blind or disabled individuals (within the meaning of subchapter XVI of the Social Security Act), who are eligible under Ohio's January 1, 1972 standards. 45 C.F.R. § 248.1(b)(2)(iii). *Webb v. Aggrey, supra* at 19.

For the foregoing reasons, it is accordingly

ORDERED, ADJUDGED and DECREED that the defendants, their successors, agents, employees, and all others in active concert and participation with them are enjoined:

a. From terminating aged, blind, and disabled persons from the Medicaid Program solely because their gross monthly incomes exceed $438, without first determining whether their incurred medical expenses permit them to spend-down to the prescribed levels ($146 per month if in an independent living arrangement; $25 per month if in an institutional setting);

b. From denying eligibility for Medicaid benefits to aged, blind, and disabled persons solely because their gross monthly incomes exceed $438, without first determining whether their incurred medical expenses permit them to spend-down to the prescribed levels ($146 per month if in an independent living arrangement; $25 per month if in an institutional setting);

c. To send immediate notice of and direct immediate compliance with this Order to all county welfare departments in the State of Ohio.

### ORDER

### ON MOTION FOR ATTORNEYS' FEES

This cause came to be heard on Plaintiffs' Motion for an Award of Attorneys Fees, filed pursuant to the Civil Rights Attorney's Fees Act of 1976. PL. 94–559, 90 Stat. 2641. Said Act permits the Court, in its discretion, to allow the prevailing party in a civil rights action a reasonable attorney's fee as part of the costs.

■ Plaintiffs are indisputably the prevailing parties in this action, which was brought pursuant to 42 U.S.C. § 1983. Moreover, the Court finds this to be a case brought for the purpose of "effectuating congressional policies of high priority." *Contrast Naprstek v. City of Norwich,* 433 F.Supp. 1369 (N.D.N.Y. filed July 29, 1977). Therefore, the Court finds that the plaintiffs are entitled to recover reasonable attorneys fees as part of the costs of this action.

Plaintiffs were represented in this action by two attorneys employed by Advocates for Basic Legal Equality, a non-profit legal services program. Both attorneys have submitted detailed affidavits setting forth their time spent on this action, totaling one hundred forty-six and one-half (146½) hours. Plaintiffs ask that counsel be compensated at the rate of sixty (60) dollars per hour.

While the Court appreciates the special competence which plaintiffs' attorneys brought to this action, the Court finds the rate of thirty (30) dollars per hour to be a more reasonable measure for computing the proper award of attorneys fees in this case. Therefore

IT IS ORDERED that the plaintiffs recover from the defendants the sum of Four Thousand Three Hundred Ninety Five Dollars and No Cents ($4,395.00) as reasonable attorneys fees in this case.

### ORDER

### ON MOTION FOR STAY

This cause came to be heard on Defendant's Motion to Stay enforcement of the Court's Order awarding to plaintiffs attorneys' fees in the sum of $4,395.00, pending disposition of the defendants' appeal to the United States Court of Appeals for the Sixth Circuit.

■ For the reasons set forth in defendant's memorandum, the Court finds De-

fendant's Motion to Stay to be well taken. And while the Court recognizes that the defendants have been less than cooperative throughout this litigation, it has no reason to believe that the Court's Order awarding attorneys' fees will not be complied with by the defendants at the conclusion of the proceedings in the Court of Appeals. Accordingly, the Court will not require defendants to post bond. Therefore, it is

ORDERED that Defendant's Motion to Stay should be and hereby is granted.

Should plaintiffs prevail on appeal, they are granted leave to file a supplemental motion for award of attorneys' fees.

IT IS SO ORDERED.