**Louis V. CASERTA, et al.,
Plaintiffs-Appellants,**

v.

**VILLAGE OF DICKINSON,
Defendant-Appellee.**

**No. 80–1655.**

United States Court of Appeals,
Fifth Circuit.

April 5, 1982.

Rehearing Denied May 3, 1982.

Stuart M. Nelkin, Houston, Tex., for plaintiffs-appellants.

Jonathan Day, Houston, Tex., Jeffrey W. Jacobs, Washington, D. C., for defendant-appellee.

Before GARZA and RANDALL, Circuit Judges *.

GARZA, Circuit Judge:

Dickinson, Texas, is located in the southeast part of the state in Galveston County between League City and Texas City. In early 1977 a committee of local residents was organized for the purpose of incorporating Dickinson. Although prior incorporation attempts had failed, the committee proposed that Dickinson be incorporated as a village rather than as a town or city as previously contemplated. It was felt that a village would be more attractive to the electorate because Texas law limits the taxing power of a village. Although the steering committee originally contemplated including the entire unincorporated area of Dickinson,[1] the members discovered that this area had too many people and too much land to fit within the Texas statutory definition of a village.

The committee drew the boundary of the proposed village to include the heart of "old downtown" Dickinson, the most heavily populated parts of Dickinson, and the areas served by the local schools. To avoid the cost of widening State Highway 3 which was scheduled for such improvement, the committee used Highway 3 as one of the village boundaries. The effect of this decision was to incorporate into the village one-half (½) of the community of Moore's Addition, a traditionally black neighborhood, and exclude the other half. Certain other minority areas were also excluded.

In drawing the village boundaries, the committee compared the racial composition of the village with that of the Dickinson Independent School District. The committee claims that this was the most readily available data for them to use. The school district encompasses an area larger than that of the traditional Dickinson community; evidence submitted at trial conflicted with respect to the percentage of blacks in the school district and the percentage of blacks in traditional Dickinson.

In July of 1977, the committee filed a Petition for Incorporation of the Village of Dickinson. An election was held on August 13, 1977, and incorporation was approved by a vote of 940 to 860. Only voters within the proposed village boundaries were permitted to vote in the incorporation election.

Shortly after the incorporation election, opponents of incorporation filed this law suit seeking to void the election, alleging that the boundaries of the proposed Village of Dickinson violated the Voting Rights Act of 1965 (42 U.S.C. § 1973), the Civil Rights Act of 1871 (42 U.S.C. § 1983), the Fourteenth and Fifteenth Amendments, and certain provisions of the Municipal Annexation Act of the State of Texas. In January, 1978, a three-judge court issued an Order of Severance stating that the voting rights issues would be heard by the three-judge court, but the remaining claims were to be heard by a single judge.

Trial of the federal constitutional and state law claims commenced in Galveston in February, 1980. The court found that the plaintiffs had failed to establish a racially discriminatory purpose or motivation behind the defendant's actions, and therefore dismissed plaintiffs' Fourteenth and Fifteenth Amendment claims. With respect to the state law issues, the court declined to exercise pendent jurisdiction finding that judicial economy and fairness to the parties was outweighed by the state of Texas' right to have their own state courts decide matters of Texas state policy and specific application and interpretation of Texas statutes. Plaintiffs now appeal to this court.

■ With respect to appellants' federal claims, we find that the district court's de-

---

* Due to his death on December 22, 1981, Judge Ainsworth did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. § 46(d).

1. The unincorporated Dickinson area is generally equated with that area encompassed by the Galveston County Water Control Improvement District No. 1 (WCID # 1). WCID # 1 encompasses the entire populated area between the southern boundary of League City and the northern boundary of Texas City.

tailed opinion thoroughly disposed of those issues. Accordingly, on the basis of the district court's opinion, we affirm the court's finding that plaintiffs failed to establish a violation of either the Fourteenth or Fifteenth Amendment. *Caserta v. Village of Dickinson*, 491 F.Supp. 500, 502–07 (S.D.Tex.1980).

■ The only remaining issue before us, therefore, is whether the district court properly exercised its discretion in dismissing the pendent state law issues. Under *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), a federal court may assert jurisdiction over pendent state court claims where (1) the federal claim is of sufficient substance to confer subject matter jurisdiction on the federal court; and (2) the state and federal claims derive from a common nucleus of operative fact. The district court found that it possessed the requisite power to exercise its pendent jurisdiction. However, the court determined that in balancing "judicial economy and fairness to the parties against the State of Texas' rights to have their state courts decide matters of Texas state policy and specific application and interpretation of Texas statutes," the "better course" was to decline to consider the state law claim. We disagree.

It is evident from the record that the state law claims were fully litigated at trial and were properly before the court. Indeed, the court itself emphasized at oral argument its concern about the state law claims and its desire that counsel direct their argument toward those issues. The state claims were extensively litigated and briefed. Principles of judicial economy, convenience, and fairness to the litigants suggest that a court should be reluctant to dismiss a pendent claim once substantial time and resources have been devoted to such claims and the court has heard the evidence and arguments on such issues. "[G]iven the advantages of economy and convenience and no unfairness to litigants, Gibbs contemplates adjudication of these claims." *Brown v. Knox*, 547 F.2d 900, 903 (5th Cir. 1977), *quoting Hagans v. Lavine*,

415 U.S. 528, 545, 94 S.Ct. 1372, 1383, 39 L.Ed.2d 577, 592–93 (1974). Accordingly, we remand this case to the district court for determination of the pendent state law claims.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.