**Kermit D. LAIRD, M.D., D.C. Strange, M.D., Russell Lyle, M.D., et al., Plaintiffs-Appellants,**

**v.**

**The BOARD OF TRUSTEES OF the INSTITUTIONS OF HIGHER LEARNING OF the STATE OF MISSISSIPPI, Defendant-Appellee.**

**No. 82–4485.**

United States Court of Appeals, Fifth Circuit.

Dec. 22, 1983.

Gholson, Hicks & Nichols, Hunter M. Gholson, Columbus, Miss., for plaintiffs-appellants.

Ed David Noble, Jr., Jackson, Miss., William Ward, Starkville, Miss., for defendant-appellee.

Before CHARLES CLARK, Chief Judge, GOLDBERG and POLITZ, Circuit Judges.

GOLDBERG, Circuit Judge:

Plaintiffs in this case challenge a Mississippi State University policy that allows university employed physicians to use campus facilities in their private practice. The challenge rests on the Fourteenth Amendment's Equal Protection Clause and Mississippi State law. Because we believe that the district court correctly found that the challenged policy bears a rational relationship to a legitimate state interest, we affirm its dismissal of the equal protection challenges. We also find that the district court acted within its discretion in dismissing the pendent state claims.

## I. BACKGROUND

### A. Facts

Plaintiffs are all practicing physicians in Oktibbeha County, Mississippi. Defendant, the Board of Trustees of the Institution of Higher Learning of the State of Mississippi[1] (the "Board") controls eight state universities,[2] including Mississippi State University ("MSU"). Since its creation the Board has adopted certain general policies to which all state universities adhere, but has delegated to each university the determination of various administrative procedures. Individual university discretion extends to the scope and sophistication of on-campus student health services. The services offered, in fact, vary from twenty-four hour physician, nursing and hospital coverage at MSU to part-time infirmary coverage at certain other state universities. Annual student health services costs range from a high of $60.00 per student at MSU to a low of $26.00 per student at the University of Southern Mississippi.

MSU employs four doctors in order to maintain its twenty-four hour services to students. All four of the physicians use university student health facilities to examine and treat private patients. Most, but not all of these private patients have connections to the university. The Director of MSU's Student Health Service and the Board contend that this on-campus private practice aids in maintaining desired levels of student medical care and student medical coverage. Record at 96. The plaintiffs in this case assert that the MSU on-campus, private practice policy competitively disadvantages them in attracting patients and hiring employees.

### B. Procedure Below

Plaintiffs brought a section 1983[3] action in district court asserting that Board approved, on-campus private practice violates equal protection in two ways. One purported violation rests on defendant's actions in allowing MSU employed physicians to use campus facilities while excluding plaintiffs; the second derives from the fact that the private medical practice permitted at MSU is not allowed at other state universities. Plaintiffs also asserted a pendent state law claim that the Board's actions in permitting private use of state property conflicts with

---

1. The Board is a state agency created by Article III, § 213–A of the Mississippi Constitution.

2. The University of Mississippi, Mississippi State University, University of Southern Mississippi, Delta State University, Mississippi University for Women, Mississippi Valley State University, Jackson State University, Alcorn State University.

3. 42 U.S.C. § 1983.

the Constitution and laws of the State of Mississippi. The complaint sought declaratory relief and an injunction to prohibit defendant and its agents from allowing the use of state university facilities in private medical practice.

On cross motions from summary judgment, the district court dismissed the equal protection claims on their merits. In ruling against the claim of unconstitutional discrimination between plaintiffs and MSU physicians, the court deferred to defendants' arguments that allowing physician employees to pursue private practice on campus enabled MSU to pay comparatively low salaries, broadened the professional skill of the physicians, and kept the physicians on campus for longer hours. Finding a rational relationship between MSU's on-campus, private practice policy and the state's interest in providing high quality medical services to MSU students, the court found no violation of equal protection. The court dismissed the second equal protection claim because it found plaintiffs lacked standing to complain that on-campus private practice is not permitted at state universities other than MSU. The district court refused to decide pendent claims because complex and unresolved state law issues were involved, because more in depth briefing would be needed to resolve those issues, and because the federal claims had been dismissed. The state claims were dismissed without prejudice so that they could be brought before the appropriate state court.

### C. Issues On Appeal

All three of the district court's basic rulings are before this court on appeal. Plaintiffs contend that the district court mistakenly concluded that defendant met the "rational relationship" standard. Plaintiffs also assert that the district court's dismissal of one of the equal protection claims for lack of standing was error. Finally, plaintiffs argue that dismissal of the pendent claims constituted abuse of discretion.

## II. EQUAL PROTECTION—PLAINTIFFS AND MSU EMPLOYEE PHYSICIANS

As noted above, one of plaintiffs' equal protection claims centers on the challenged policy's discrimination between MSU employee physicians and plaintiffs. The Supreme Court made painfully[4] clear in *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–2517, 49 L.Ed.2d 511 (1976), the correct level of scrutiny for state policies like the one involved here.

Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest.

Plaintiffs, not claiming that they are members of a protected class or that the practice of medicine constitutes exercise of a fundamental right, agree that the "rational relationship" standard is appropriate. They further admit that the asserted state interest in "good student health care" is legitimate. Plaintiffs challenge to MSU's private practice policy rests on their contention that the policy is *not rationally related* to good student health care.

In making such a challenge, plaintiffs must shoulder a heavy burden as explained in *Kite v. Marshall,* 661 F.2d 1027, 1030 (5th Cir.1981), *cert. denied,* 457 U.S. 1120, 102 S.Ct. 2934, 73 L.Ed.2d 1333 (1982).

A state action viewed under the rational basis banner is presumed to be valid. In such a situation, the burden is not upon the state to establish the rationality of its restriction, but is upon the challenger to show that the restriction is wholly arbitrary.

*Pappanastos v. Board of Trustees of the University of Alabama,* 615 F.2d 219, 221 (5th Cir.1980), states that the court's task is to inquire whether "any state of facts may be conceived to justify" the challenged policy. We must, therefore, examine the justi-

---

**4.** The Supreme Court reversed this court's decision in *Dukes v. City of New Orleans,* 501 F.2d 706 (5th Cir.1974) (Goldberg, J.), by a margin of 8–0.

fications defendant asserts for allowing its employee physicians to use campus facilities for private practice. The inquiry is an abbreviated one, though, for we have to look no further than to the challenged policy's basic function. Discriminating between doctors who work for the university and those who don't is simply part of MSU's method of compensating its employees. That a rational relationship exists between compensating doctors and running a medical care program can hardly be challenged.

■ Aside from their complaint that MSU discriminatorily bestows benefits upon its employee physicians, plaintiffs can also be heard to complain about the particular nature of those benefits. Plaintiffs assert that MSU's in-kind compensation of its doctor employees gives those doctors a special competitive advantage with respect to private practice. Such a claim, however, does not fall within the purview of the equal protection clause. Having found that MSU's compensation scheme constitutes a rational effort to promote a student medical care program, we can look no further.[5]

Even if MSU could compensate its doctor employees in a manner that was equally effective but less disadvantageous to plaintiffs, "we cannot impose upon the state our view of what may constitute the fairest or most rational scheme." *Alford v. City of Lubbock, Texas,* 664 F.2d 1263, 1267 (5th Cir.1982), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 848 (1982); *see also Dandridge v. Williams,* 397 U.S. 471, 485–87, 90 S.Ct. 1153, 1161–1162, 25 L.Ed.2d 491 (1970). As pointed out in *City of New Orleans v. Dukes, supra,* 427 U.S. at 303, 96 S.Ct. at 2516–2517,

> the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.[6]

## III. EQUAL PROTECTION—PLAINTIFFS AND PHYSICIANS IN OTHER MISSISSIPPI COMMUNITIES

■ Plaintiffs' other equal protection claim centers on their assertion that only

---

**5.** In the district court and on appeal the parties have argued extensively about the overall efficiency of MSU's on-campus, private practice compensation scheme. Although we do not and indeed cannot decide this case on such grounds, we pause to comment on plaintiffs' arguments.

In disputing the existence of a rational relationship between MSU's on-campus, private practice policy and good student health care, plaintiffs cite the fact that MSU is the only state university to allow such a large degree of private practice. Plaintiffs argue that if such a policy best promoted good student health care, the Board would mandate the policy at the other state universities. The argument is unconvincing. Because the scope and sophistication of student health care vary among Mississippi's eight state universities, it is logical that the best means of achieving those different levels would also vary. The optimum way to offer 24-hour physician care may not be the most efficient means of maintaining part-time infirmary services.

Plaintiffs also argue that defendant's position is undercut by the fact that MSU has the highest per capita student health cost among all state universities. The assumption is that any cost savings of MSU's policy would be reflected in lower student health care costs relative to other universities. But again, plaintiffs'

argument fails to account for the varying levels of health care offered at the state's eight universities. High level medical care has no necessary cost correspondence with low level medical care.

**6.** Plaintiffs pose the additional argument that defendant's policy violates Mississippi law and it, therefore, cannot be rationally related to a legitimate state interest. We specifically decline to decide this issue. Because plaintiffs seek the same relief independently under their state and federal claims, it would be absurd to decide the state law issues based on their purported relevance to the equal protection claims. If a finding was made that the challenged policy violated state law, relief could be granted on that ground and the equal protection claim would never be reached. Alternatively, if the policy was found consistent with state law, the plaintiffs' equal protection argument would fail. The policy of avoiding decision of federal constitutional questions sometimes justifies deciding pendent, state law questions first. That policy is clearly not relevant where the only reason to rule on the state law questions is so that the federal issues may be decided. Given separable state and federal claims seeking identical relief, we refuse to purposelessly subvert the district court's proper exercise of discretion (discussed infra at 534–535) in declining pendent jurisdiction.

MSU among the eight state universities allows such a significant degree of on-campus, private practice. This policy produces an impermissible classification, according to plaintiffs, inflicting competitive disadvantage on doctors practicing near MSU while not harming doctors in other state university communities. Again, the rational relation test is appropriate; again plaintiffs' claim fails. We have little problem in conceiving of a "reasonable state of facts" to justify defendant's practice, *Pappanastos, supra,* 615 F.2d at 221, of giving each university discretion in establishing the operating levels and administrative policies of campus health care programs. It stands to reason that individual university administrations can best take into account the price and availability of local, private medical care and the age, backgrounds, medical need and general dependence on campus services of a particular student body. Just as the Equal Protection Clause does not empower the judiciary to "second guess state officials charged with the difficult responsibility of allocating public welfare funds," *Dandridge v. Williams, supra,* 397 U.S. at 488, 90 S.Ct. at 1163, it does not empower this Court to determine either the appropriate levels of medical care to be offered at particular universities, or the best way to achieve those levels. We find the challenged practice rationally relates to the goal of good student health care.

## IV. THE PENDENT STATE CLAIMS

■ Pendent jurisdiction is a "doctrine of discretion, not of plaintiff's right." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). A number of factors exist to guide the exercise of this discretion. The factors relevant to this case include (1) the degree to which state issues dominate "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought;" (2) the policy of avoiding needless decisions of state law "as a matter of comity and to promote justice between the parties, by procuring for them a sure-footed reading of applicable law;" (3) "judicial economy, convenience, and fairness to

the litigants," *Gibbs, id.,* 383 U.S. at 726, 86 S.Ct. at 1139; *see also Jackson v. Stinchcomb,* 635 F.2d 462, 473 (5th Cir.1981); and (4) the extent to which a decision on state issues may preclude the need to decide a federal constitutional question, *Hagans v. Lavine,* 415 U.S. 528, 546, 94 S.Ct. 1372, 1383, 39 L.Ed.2d 577 (1974). Of the four factors, only the last one cuts in favor of the trial court's adjudicating plaintiffs' Mississippi state law claims. And, the Supreme Court has cautioned that the policy of avoiding constitutional questions is not absolute. *Id.* Moreover, because of the clear weakness of the federal claim in this case, the policy of avoiding a constitutional claim in favor of state law matters carries little weight indeed. To urge decision on state issues when a dubious federal claim provides the only basis for federal jurisdiction amounts to an argument that "the state tail should wag the federal dog." *Mayor of the City of Philadelphia v. Educational Equality League,* 415 U.S. 605, 627 n. 23, 94 S.Ct. 1323, 1337 n. 23, 39 L.Ed.2d 630 (1974).

■ The other three factors articulated in *Gibbs* clearly support the district court's dismissal of the state claims. Addressing the degree of dominance of state issues, the district court below concluded that the state law claims constituted "the real body of the case." Record at 83. We agree. Not only do plaintiffs request relief independently under their state law claims, they depend extensively on state law in arguing their equal protection claims. (See discussion *supra* at 532). State law issues rather than the federal claims predominate in this case.

Securing a "surer-footed reading" of state law from state courts is also desirable here. The district court observed that the state issues are of statewide importance to university-employed professionals in many fields and that no clear precedent exists to resolve these issues. The unsettled nature of state law is an "entirely appropriate" factor to consider, *Moor v. County of Alameda,* 411 U.S. 693, 715–16, 93 S.Ct. 1785, 1798–1799, 36 L.Ed.2d 596 (1973). Especially when a case presents important state law issues, "federal courts must re-

frain from unnecessary poaching upon a sovereign state's jurisprudential turf." *Joiner v. Diamond M Drilling Co.,* 677 F.2d 1035, 1042 (5th Cir.1982).

■ Finally, the district court's dismissal is consistent with considerations of judicial economy, convenience and fairness to the litigants. This is not a case where the district judge dismissed the pendent claims after full trial litigation on the claims' relevant facts. *See, e.g., Caserta v. Village of Dickinson,* 672 F.2d 431, 433 (5th Cir.1982); *Perry v. Jones,* 506 F.2d 778, 781 (5th Cir. 1975). In fact, the district court here concluded that more briefing was needed to decide the state court issues. Disposition of this case by summary judgment, in itself, supports the dismissal of the pendent claims. Court timing in dismissing federal claims is talismanic in applying the judicial economy factor. When federal claims fall prior to trial, pendent state claims "should be dismissed as well." *Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. at 1139; *see also Joiner v. Diamond M Drilling Co., supra,* 677 F.2d at 1042. Overall, judicial economy or convenience would have been little served by the district court's adjudication of the issues. And, plaintiffs make no arguments that the dismissal was in any way unfair to them.

## V. CONCLUSION

With respect to discriminatory government policies that involve neither a protected class nor a fundamental right, precedent tightly lashes the hands of federal courts. Precedential bindings are relatively loose, though, in the area of district court discretion to decline pendent jurisdiction. It is not for this Court to cut the precedential restraints in equal protection doctrine; and, we see no reason now to impose any new restrictions as far as trial court discretion to decline pendent jurisdiction. We, therefore, AFFIRM the district court's judgment.

AFFIRMED.